**STATE of Iowa, Appellee,**

v.

**Edward Harrison BOUSMAN, Appellant.**

**No. 85–537.**

Supreme Court of Iowa.

May 21, 1986.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen., G. Wylie Pillers III, Co. Atty., and Gary J. Rolfes, Asst. Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

UHLENHOPP, Justice.

This appeal involves a challenge to the validity of a search warrant.

The police in Clinton, Iowa, received information, which we will later detail, concerning home burglaries in Clinton by Keith and Charles Bousman and James Smith, concerning a trip by some of these men to Las Vegas, Nevada, to sell the loot, and concerning another such trip to Las Vegas to be taken with another of the Bousman brothers, defendant Edward Harrison Bousman.

On December 25, 1983, sixteen carved Chinese soapstone vases were stolen from the home of Julia Voelpel in Clinton.

Clinton Police Officer David Speakman had defendant under surveillance on the evening of February 10, 1984. He saw defendant and his wife loading articles into defendant's Lincoln automobile at defendant's home. Defendant and his wife then drove to a service station and bought gasoline.

Later that evening, Officer Burton Simmons took over surveillance. He saw defendant and wife go into a tavern and speak with Charles Bousman, and later leave the tavern. Defendant and wife then drove to the home of Michael Diettrick, entered, and emerged shortly carrying a suitcase and a box, which they placed in the trunk of the Lincoln. Next they drove to their home and to a restaurant, then picked up another couple and their baggage, and drove out of town.

Officers followed defendant's car into the country, where they stopped it and detained the passengers while other officers sought a warrant to search the car.

The other officers presented an affidavit to a district judge, Pelton, J. We set out the relevant portion of the affidavit in extenso:

[O]fficers obtained information from Keith Bousman that his brother Charles Bousman and a man known as James Milton "Mushy" Smith, have been involved in many home burglaries in Clinton. Officers have also been told by Lottie McKenzie, Nee/Bousman, that her home was burglarized by Charles Bousman and James Smith. She also said that she has information that Charles Bousman and James Smith burglarized a home owned by Lee Sullens and took a safe containing coins. This same information also was given to officers by Keith Bousman. Mrs. Orville Bousman, mother of Charles, Lottie and Keith and Edward has also told officers that she has knowledge that her son Charles has taken part in many burglaries specifically the burglaries listed above and another burglary of the Julia Voelpel home in which a pistol and some valuable figurines were taken. Mrs. Voelpel is a relative of the Bousmans. Information on burglaries included two burglaries involving Don Bartels, Clinton jeweler who owns Dons Jewelry store on Main Ave.

In the first burglary Bartels' home was broken into and jewelry was taken. In the second burglary Bartels' store was entered and more jewelry was taken. Information from Keith Bousman, on Lee Sullens' home burglary indicated that Charles Bousman and James Smith took most of the coins obtained from that home to Las Vegas where they were sold along with the proceeds of other burglaries. Keith Bousman has admitted to police that he broke into Don's Jewelry store on Main Ave. in Clinton and took many rings. He sold some of the rings to "Doc" Wiersema of Clinton and Fulton, Ill. The rest of the rings were sold by Keith Bousman to Charles Bousman. When authorities discovered that Keith Bousman and others had perpetrated the burglary of Dons, Keith Bousman, in keeping with a plea agreement with the Clinton County Attorney, attempted to get the rings back from Doc Wiersema. Wiersema told Keith Bousman that he had sold all the rings that he had to Charles Bousman. Keith Bousman has told police that Charles Bousman and James Smith transported stolen articles worth several thousand dollars to Las Vegas in a car and returned with a lot of money. Keith Bousman, Lottie Bousman and Mrs. Orville Bousman all say that Charles and James Smith are preparing to take another load of stolen articles to Las Vegas and that they are going to go with another of the Bousman brothers, Ed Bousman. Further that they are going to use Ed's car, a 1974 dark over white Lincoln Continental with Iowa License BLJ880. Officers tonight have been watching the Ed Bousman home and have seen Bousman and a woman loading articles into the white Continental, in the front and back seat. Officers watched the car leave the home, go to a store and then to a gas station where Ed Bousman was seen putting gas in the car and checking under the hood of the car. The car then went to another gas station where Ed Bousman got a six pack of beer and a bag of ice. Keith Bousman also told officers that Charles Bousman and James Smith had burglarized a home owned by Robert Starbuck of Clinton in which a quantity of coins were stolen. Keith Bousman further stated that some of those coins were sold by Charles Bousman to a man named Diettrick in Camanche, Iowa. Officers acting on that information contacted Diettrick and found that Charles Bousman had sold him some coins. The coins were identified by Robert Starbuck as being his and a warrant was obtained for Charles Bousman based on that information. The information from Lottie McKenzie and from Mrs. Orville Bousman was obtained by police on the present date, 021084. Keith Bousman gave police the information herein stated on 020884. Don's Jewelry store was broken into on 011084. Information came to police on 020184 that Keith Bousman was involved in that burglary. The Julia Voelpel home burglary was on 122583. The Lee Sullens home burglary was on 011084. The Robert Starbuck burglary was on 070183. The burglary of Don Bartels' home was 112883. This warrant application has been prepared on 021084.

The judge issued a warrant and endorsed his findings on it, which state in relevant part:

City has had several burglaries in past several months. Jewelry taken from businesses and homes. Keith Bousman was arrested and taken into custody and gave police several statements in past two days that his brother, Chuck Bousman, and James (Mushy) Smith were involved in Lee Sullens burglary, and coins taken were transported by car to Las Vegas by Chuck and Ed Bousman and Mushy Smith. Also, Keith was told by Chuck Bousman that he and Smith did a Starbuck burglary and coins were taken and specific gold pieces were sold to Diettrick in Camanche, Iowa. Police went to Diettrick and Diettrick gave statement acknowledging that he bought them from Chuck Bousman, and Starbuck identified the coins as these stolen from his home.

Sister Lottie McKenzie told police today that her brother Chuck Bousman and James Smith were involved in many burglaries and had taken valuables to Las Vegas and were planning another trip soon with more loot. She specifically mentioned burglaries to her home and Voelpel residence.

The information of informant appears credible because: (Magistrate to delete any not applicable) Keith Bousman, Lottie McKenzie and Mrs. Orville Bousman are likely to be credible because there is presently bad blood between them and Chuck and Ed, primarily Chuck, as they believe Chuck has victimized them too, and Chuck's refusal to cooperate with returning rings stolen by Keith from Don's Jewelry, the family believes, has resulted in Keith's probation revocation. This info is in addition to the affidavit attached hereto and was supplemented by the sworn oral testimony of Officers Hansen and Speakman.

Sworn testimony indicates this informant has given reliable information on prior occasions. Keith did as to coins sold by Chuck Bousman to Diettrick.

Informant has not been used before but credibility exists by reason of corroboration from other sources. Three persons corroborate each other and checks out as true insofar as has so far been determined.

The informant appears credible or the information appears credible for the following reasons:

Mother of Chuck, Keith and Ed Bousman, Mrs. Orville Bousman, told police last night, 2–10–84, that Chuck, Ed Bousman and Mushy Smith were involved in burglaries and sale of stolen property taken to Las Vegas. Lottie McKenzie, Mrs. Orville Bousman and Keith Bousman all told police in past two days that Chuck Bousman and Ed Bousman and Mushy Smith are planning to take a car load of stolen property to Las Vegas 2–10–84 in Ed's car, a '74 white Continental. Police have surveilled Ed Bousman's car this evening for past four hours and they made a number of stops, got gas and beer, and made at least three stops at different houses where they loaded the trunk with items. They stopped (Ed and woman with him) and talked to Chuck Bousman and picked up another couple and left town.

Rings from Don's Jewelry—and all the other items listed in the search warrant were items that have not yet been disposed of and were being taken to Las Vegas.

Police also told by Keith Bousman that Chuck and Ed Bousman and James Smith were all carrying guns.

All of the above and the oral and application are sufficient grounds for granting the application. The court finds probable cause does exist to issue the search warrant as prayed for.

The officers took the warrant to the scene of the Lincoln, and searched the vehicle. They discovered the suitcase and box, and inside those containers they found fourteen vases which Voelpel later identified as belonging to her.

The county attorney charged defendant (and his wife) with second-degree theft. Iowa Code §§ 714.1(4), 714.2(2) (1983). Defendant moved to suppress the items discovered in the search. On May 21, 1984, the district court, Werling, J., overruled the motion and stated inter alia:

In breaking down the testimony of the Bousman family members that was recited in the Application for the Warrant, Defendants' counsel points out that none of the family members allege that the defendant Ed Bousman has taken part in any of the burglaries. We do not believe that this comports with the record. The statement on the search warrant Application page 2 is "Keith Bousman, Lottie Bousman and Mrs. Orville Bousman all say that Charles and James Smith are preparing to take another load of stolen articles to Las Vegas and that they are going to go with another of the Bousman brothers, Ed Bousman." The Court cannot agree that Ed Bousman was not tied to the activities by the witnesses.

In counsel's comments upon the police observations, counsel asserts that all of the activities that the police saw Ed Bousman and his wife doing on the night of February 10th were innocent-appearing activity and, therefore, do not provide a basis for a finding of probable cause. Here, again, the Court cannot agree with counsel's interpretation. The police officers have to be viewed in the light of the situation as it existed at the time. That situation was that three of the Bousman family members had informed the officers that Ed Bousman together with Charles Bousman and James Smith were planning to take a load of stolen merchandise to Las Vegas in Ed Bousman's car. As we have already noted, various checks had indicated the reliability of the statements being furnished to police by the Bousman family members. Acting upon this information the police observed Ed Bousman for a period of approximately four hours and observed him making preparations for what appeared to be a trip. He was loading the car; he filled it with gas; he checked under the hood and, in fact, talked to Charles Bousman, one of those identified as having the stolen merchandise. While taken out of context, all of these things have the appearance of innocence; yet where the police officers are armed with the knowledge that a trip for criminal purposes was being planned, then the observation of the accused making arrangements to leave town and, in fact, leaving town bear an entirely different significance.

Probable cause is what is needed to be found in this case. At this juncture it is not necessary to have evidence sufficient to render a finding of guilt. The judge was provided with information, the reliability of which had been tested to some extent, establishing that members of the Bousman family and James Smith had been engaged in a series of burglaries in Clinton County. They were furnished with information that James Smith and Charles Bousman had taken stolen merchandise to Las Vegas and returned with money. They were furnished with information that another trip to Las Vegas was planned, this time involving the defendant Ed Bousman and his automobile, for the purpose of taking stolen merchandise to be sold. A visual observation of Ed Bousman indicated that he was preparing to leave and, in fact, did leave town. While it is true that the defendant Ed Bousman was not connected with any of the burglaries by any of the witnesses, either police or family members, that does not mean that the Search Warrant information was insufficient and the Warrant therefor invalid. The basic purpose and use of the information regarding all of the various burglaries that Smith and the Bousmans had been involved in was to establish that they were the persons responsible for goods being stolen in Clinton County. The officers were informed Ed Bousman was planning to leave town. They made their own observation of Bousman to determine the truth or lack of truth in that information. That information turned out to be true.

. . . . .

The Court finds from all of the foregoing recited facts that the Warrant issued in this case was based upon sufficient fact and that probable cause did exist. It follows, therefore, that the Motion of the defendants to suppress should be and is hereby overruled.

In March 1985 defendant went on trial before the district court, Carstensen, J., and a jury. On March 6, 1985, the jury found defendant guilty. On March 25, 1985, the court passed sentence, and on April 8, 1985, defendant appealed. The questions in the appeal are whether Judge Pelton lawfully issued the search warrant and Judge Werling correctly overruled the motion to suppress, and whether Judge Carstensen properly admitted the vases into evidence. We review de novo. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975).

I. *The test.* Cases of this kind contain two basic issues: whether items seized were obtained in violation of the constitutional search and seizure clause and, if so, whether the items, although otherwise relevant and admissible, are inadmissible in a subsequent trial. This case involves the first issue. More specifically, the question is whether the warrant to search the Lincoln was constitutionally infirm.

Both the United States and the Iowa Constitutions prohibit the issuance of a search warrant except on "probable cause". U.S. Const. amend. 4; Iowa Const. art. I, § 8. While the officers in this case had some personal knowledge, they relied mainly in obtaining the warrant on information from others, and Judge Pelton issued the warrant largely on that basis.

Over the course of time the United States Supreme Court developed a two-pronged test regarding probable cause when information from informants is used. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Under *Spinelli and Aguilar,* the issuing judicial officer must be informed of facts (1) from which the informant reached his conclusions, and (2) from which the affiant concluded the informant was reliable. *State v. McManus,* 243 N.W.2d 575, 577–78 (Iowa 1976).

More recently the United States Supreme Court adopted a broader approach of the totality of the circumstances as disclosed by the affidavit. After reciting its rationale, the Court stated in *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548, *rehearing denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983):

> For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*

*Gates* was decided on June 8, 1983. We applied *Gates* in *State v. Luter,* 346 N.W.2d 802 (Iowa 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 116, 83 L.Ed.2d 59. In the instant case the incident charged occurred on February 11, 1984, the motion to suppress was overruled on May 21, 1984, the trial took place in March 1985, judgment was rendered on March 25, 1985, and notice of appeal was filed on April 8, 1985.

II. *The facts.* We regard *Gates* as applicable under the Iowa as well as the United States Constitutions. Under the *Gates* rule, Judge Pelton had to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of the persons supplying hearsay information, a "fair probability" existed that evidence of a crime would be found in the Lincoln. As a practical, common-sense matter, we agree with Judges Pelton and Werling that a fair probability did exist, for the reasons endorsed by Judge Pelton on the warrant and stated by Judge Werling in overruling the subsequent motion. We have already quoted those reasons, and no necessity exists to repeat them here. We also recall statements in *Spinelli,* 393 U.S. at 419, 89 S.Ct. at 591, 21 L.Ed.2d at 645 ("magistrate's determination of probable cause should be paid great deference by reviewing courts"), and in *United States v. Ventresca,* 380

U.S. 102, 108, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965) (voicing disapproval of a "grudging or negative attitude by reviewing courts toward warrants" and of interpreting affidavits "in a hyper-technical rather than a common-sense, manner"). We hold that the warrant issued on probable cause.

III. *Subsequent legal developments.* Both sides cite legal developments in the field of search and seizure which occurred after the conviction in this case. On July 5, 1984, the United States Supreme Court decided a case in which a magistrate had issued a warrant without probable cause but in which the officers had acted in good faith. The Court proceeded to the second basic issue (effect of invalidity of warrant), refused to apply the exclusionary rule, and adopted a "good faith" rule. *United States v. Leon,* ── U.S. ──, ──, 104 S.Ct. 3405, 3423, 82 L.Ed.2d 677, 700–01 ("In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."). The State urges us to adopt the *Leon* rule in the present case. We find no necessity to consider that contention, as we have held that probable cause did exist here and that the warrant was valid.

 Defendant cites an amendment to section 808.3 of the Iowa Code which became effective July 1, 1985. Section 808.3 deals with applications for search warrants. The General Assembly added a clause to the section that if the grounds are supplied by an informant the magistrate "shall include a determination that the information appears credible either because the sworn testimony indicates that the informant has given reliable information on previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate." Iowa Code § 808.3 (1985 Supp.). Defendant couples the quoted amendment with a clause in rule 11 of the Iowa rules of criminal procedure: a person may move to suppress things obtained by illegal search and seizure and "[i]f the motion is granted" the things "shall not be admissible in evidence at any hearing or trial." *See Kain v. State,* 378 N.W.2d 900, 903 (Iowa 1985).

We hold that the statutory amendment did not apply to this search and seizure as the amendment became effective after the search and seizure had occurred and after the case had gone to judgment. *See also* Iowa Code § 4.13 (general savings provision). Thus we have no necessity to construe the statutory amendment. Moreover, Judge Pelton's findings adequately comport with the amendment in any event. The warrant properly issued.

We uphold the conviction.

AFFIRMED.