STATE of Iowa, Appellee,

v.

Nanette Kay NIEHAUS, Appellant.

No. 89–338.

Supreme Court of Iowa.

Feb. 21, 1990.

As Corrected March 2, 1990 and April 11, 1990.

Theodore R. Hoglan of Fairall, Fairall, Kaplan, Hoglan & Condon, Marshalltown, for appellant.

Thomas J. Miller, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., Brent D. Heeren, County Atty., and Richard R. Vander Mey, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

SNELL, Justice.

Nanette Kay Niehaus appeals from convictions for possession of a schedule I controlled substance with intent to deliver or manufacture, and possession of marijuana. The events which culminated in Niehaus's arrest and conviction began in August 1987 when Renee Duff reported the theft of a cable control box and other items from a house in Marshalltown she had recently vacated. Niehaus and Lisa Wollard, both acquaintances of Duff, had cleaned the house at the request of Duff's landlady. Niehaus and Wollard were investigated in connection with the theft, but were not arrested or convicted. The case was not solved, and apparently the control box and other items were never found.

On or about June 9, 1988, Duff informed Tama county deputy sheriff Bruce Bolin that Wollard told her that on June 4, 1988, Wollard saw the control box on a table beside the television in the home Niehaus shared with her boyfriend. Bolin asked a few questions of Duff to satisfy himself that no personal animosity existed between either Duff and Niehaus or Wollard and Niehaus. He formed the opinion that neither Duff nor Wollard had any reason to falsify the information, although he did not confirm Duff's story with Wollard. After his conversation with Duff, Bolin went to the Niehaus residence, and observed that cable television could not be installed in the home. In addition, Bolin discovered that Niehaus had been convicted of third-degree theft some ten years earlier, and that both she and Wollard had been subjects of the initial investigation into the theft of the control box. Although Bolin never communicated with Wollard, a warrant to search for the control box was issued primarily on the basis of her alleged conversation with Duff.

Armed with the warrant, Bolin and Tama County Sheriff Mike Richardson went to Niehaus's residence to search for the control box. They did not find it in plain sight and proceeded to search cabinets near the television where it might have been concealed. Although this search did not yield the missing control box, the officers found a quantity of marijuana and drug paraphernalia.

While one of the officers remained to secure the premises, the other obtained a warrant to search the residence and outbuildings for illegal drugs and drug-related items. Pursuant to a search backed by this second warrant, the officers found and seized several hundred grams of marijuana as well as numerous items of drug paraphernalia. Both Niehaus and her boyfriend were charged and convicted.

Prior to trial, Niehaus challenged the first warrant by a motion to suppress. At hearing on the motion, Wollard testified that she had said nothing to Duff regarding the control box, and had not even been in Niehaus's home on June 4. Other evidence demonstrated that Wollard did not convey any information to Duff concerning the control box.

Niehaus's appeal to this court interweaves cases involving affiant's and informant's involvement with search and seizure issues under the Fourth Amendment of the United States Constitution. She does not appeal on state constitutional grounds, nor is Iowa Code section 808.3 applicable, since both Duff and Wollard are named in Bolin's affidavit and the warrant. *See State v. Weir*, 414 N.W.2d 327, 331 (Iowa 1987).

Niehaus's primary contention is that Deputy Bolin acted with reckless disregard for the truth by failing to confirm the story that Duff told him with Wollard, the alleged source of the information. Niehaus concludes that under the standards announced in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), this information should be deleted from the warrant, and a determination of whether probable cause to issue the warrant existed should be made in the absence of the false information.

Niehaus also urges application of the "two-pronged test" that evolved from the Supreme Court's rulings in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine that the issuing magistrate lacked the necessary information to determine Duff's credibility, since Bolin never bothered to independently confirm its details. We note that the *Aguilar–Spinelli* test was substantially overruled in the context of a federal fourth amendment challenge by *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).

Since the information imparted by Duff undergirds both warrants, Niehaus claims that in its absence probable cause did not exist for either warrant, and asks that the evidence upon which her conviction is predicated be suppressed. These two arguments differ in that the first focuses on the veracity of the affiant while the second focuses on informant credibility and the reliability of the information. Nevertheless, they are interrelated in that both are concerned with the reliability of the information the magistrate used in determining

to issue the first warrant. They are also similar in that they are both reliant on the fact that Bolin did not check the facts with Wollard.

## I. *Preservation of Error.*

■ Before dealing with these issues, however, we must address the State's contention that Niehaus failed to preserve error with regard to whether Bolin's application for the warrant was undertaken with reckless disregard for the truth. Noting Niehaus's argument that as Bolin's putative informant, Wollard's credibility was not shown to be sufficiently reliable, the State asserts that the issue of Bolin's alleged disregard for the truth "was barely touched upon."

This court has repeatedly stated that a defendant may not assert an error on appeal unless the error has been preserved at trial. *See, e.g., State v. Latham*, 366 N.W.2d 181, 183 (Iowa 1985).

The record of the suppression hearing in this case makes it obvious that Niehaus preserved error with regard to both issues. She relied heavily upon the argument that Bolin's failure to communicate with Wollard constituted reckless disregard for the truth. The trial court's ruling dealt specifically with the issue.

## II. *The Franks Standard.*

■ In *Franks*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court developed a means to examine truthfulness of an affiant in presenting evidence to a magistrate supporting issuance of a search warrant. This court adopted the *Franks* standard in *State v. Groff*, 323 N.W.2d 204, 206–08 (Iowa 1982). The inquiry adopted by *Franks* is limited to a determination of whether the affiant was purposely untruthful with regard to a material fact in his or her application for the warrant, or acted with reckless disregard for the truth. *Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682. If the court finds that the affiant consciously falsified the challenged information, or acted with reckless disregard for the truth in his or her application for the warrant, the

offensive material must be deleted and the remainder of the warrant reviewed to determine whether probable cause existed. *Id.* 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682. Allegations of negligence or mistake are insufficient to sustain an assault on the warrant, and only impeachment of the affiant is permitted, not that of a nongovernmental informant. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. Since the constitutionality of the procedure used in obtaining the search warrants is at issue in the case at bar, our review is de novo. *State v. Swaim*, 412 N.W.2d 568, 570 (Iowa 1987); *accord, State v. Luter*, 346 N.W.2d 802 (Iowa 1984), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *State v. Groff*, 323 N.W.2d 204 (Iowa 1982).

Niehaus does not accuse Bolin of being deliberately untruthful in his application for the first warrant. She focuses instead on whether his failure to check Duff's story constituted reckless disregard for the truth. While the State admits the salient facts upon which Niehaus bases her argument, it contends that Bolin's conduct at most constituted only negligence.

We are convinced that the challenged information is material to the determination of probable cause for the search of Niehaus's residence pursuant to the first warrant. Accordingly, we review to determine whether Bolin's conduct constituted reckless disregard under *Franks*. *State v. Weir*, 414 N.W.2d 327, 332 (Iowa 1987).

Some cases reviewing factual information backing a search warrant under *Franks* have concluded that reckless disregard can be proven in two ways. The first of these is by showing directly that the affiant had serious doubts as to the veracity of an informant's statement. *See e.g., A Residence Located at 218 3rd Street*, 805 F.2d 256, 258 (7th Cir.1986); *United States v. Davis*, 617 F.2d 677, 694 (D.C.Cir.1979). Niehaus has not produced direct proof that Bolin actually entertained such doubts and does not make that argument here.

The second method by which proof that Bolin recklessly disregarded the truth may be shown requires an inference "from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *A Residence Located at 218 3rd Street*, 805 F.2d at 258 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985)). Niehaus argues that this approach implies at least a minimal obligation on the part of the speaker to check his or her facts. She contends that determination of whether the affiant acted with reckless disregard under the *Franks* standard should focus upon whether the affiant checked with sufficient care the facts he or she presented in the warrant application.

Niehaus advances several circumstances from which she claims that Bolin should have deduced that Duff's claims were possibly untruthful. The first of these involves the specificity of Duff's story, indicating that the allegedly stolen control box was located in plain sight near the television, implying its use by Niehaus for its intended purpose. Niehaus reasons that Bolin should have been put on his guard by his own observation that cable television was not installed in her residence. Secondly, she reasons that Duff's insistence that Wollard—the putative source of the information—did not want to get involved should have given rise to suspicion on Bolin's part. Third, Duff had apparently recently been billed by the cable television company for the missing control box and had a financial motive for deflecting blame for its loss. Finally, Duff had initially accused Niehaus of the theft, but the initial investigation had not resulted in her arrest. She concludes that these circumstances constituted obvious reasons for Bolin to question Duff's credibility and confirm the story with Wollard.

In *United States v. Dorfman*, 542 F.Supp. 345 (N.D.Ill.1982), *aff'd sub. nom. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985), the appellants challenged an order authorizing a wiretap on the grounds that material misrepresentations were made in the application with intentional or reckless dis-

regard for the truth. They sought exclusion of the allegedly false statements on the basis of *Franks.* *Dorfman,* 542 F.Supp. at 358, 365–70. The court pointed out that no "duty to investigate" is incumbent upon an officer confronted with information provided by an informant. *Id.* at 369. The court determined that "the reckless disregard for the truth required by *Franks* is not established by a mere failure to investigate." *Id.* The court also pointed out that the *Aguilar–Spinelli* test then in effect provided adequate safeguards ensuring the reliability of hearsay contained in the affidavit. *Id.* at 369, n. 21.

Regarding the extent of investigation, the record also shows that Bolin made a not insubstantial effort to assess the plausibility of Duff's story. He determined that Niehaus had been in a position to take the control box from Duff's former residence, that she had been at the site of the alleged theft on the day in question, and that Duff had reported her suspicions to police at the time of the alleged occurrence. In addition, Bolin confirmed that Wollard knew the circumstances surrounding the alleged theft as the result of her own involvement in the initial investigation, and thus would have been aware that Duff was allegedly missing a cable control box that she reported stolen.

Other cases dealing with this issue—including our own—indicate that our inquiry should also focus on the ways and means by which the affiant supplies facts to the issuing magistrate. *See, e.g., United States v. Namer,* 680 F.2d 1088, 1094–95 (5th Cir.1982); *State v. Seager,* 341 N.W.2d 420, 424–25 (Iowa 1983). In other words, one focus of a *Franks* inquiry is on whether the affiant consciously presented false or misleading information to the issuing magistrate, or acted recklessly in presenting the factual information in such a way that it could mislead the magistrate.

In *Seager,* this court applied the *Franks* standard to determine that information in an affidavit should be deleted. In that case a police officer told the issuing magistrate that the information had been imparted to him by a second officer. In the circumstances of that case the second officer could not recall talking to the first officer about the information. Serious doubt existed as to whether the second officer ever had such information in his possession. *Seager,* 341 N.W.2d at 424. This court found that the first officer had acted with reckless disregard for the truth in using the information to secure the warrant. *Id.* at 425. The court concerned itself with the presentation of information by the affiant to the magistrate.

The affidavit used in this case was itself a simple form with blank spaces for the officer to indicate such things as the basic information upon which the warrant was based and the source of that information, as well as the reasons for his belief that both the informant and the information were credible. Appended to this simple form were several documents, including the police report on the initial theft and its investigation, and Duff's handwritten, notarized statement containing the information she imparted to Bolin.

On the form affidavit itself, Deputy Bolin listed his informant as a citizen with personal knowledge of the facts and circumstances. He listed as indicia of her credibility the fact that she had been an invited guest in the Niehaus home when she had allegedly seen the missing control box. Bolin did not name the informant on the form itself. Reviewed in isolation Bolin's remarks on the form affidavit do appear to be misleading and provide support for Niehaus's contention. They appear to indicate that Bolin had spoken personally with an individual who had been in the Niehaus home and who had observed the missing control box. In short, it appears that Bolin indicated to the magistrate that Wollard was his informant, when in fact he had spoken only to Duff.

In *United States v. Namer,* 680 F.2d at 1094–95, the court held that the affiants' choice of wording in their affidavit for a search warrant mischaracterized certain items in the defendant's possession as securities, when in fact the nature of the items in question was ambiguous. Since issuance of the warrant was dependent upon

whether the items were in fact securities, the court held that the affiants had acted with a reckless disregard for the truth. *Namer*, 680 F.2d at 1094. However, negligence or mistake in presenting such information to the magistrate is insufficient under *Franks* to constitute a basis for challenge to the warrant. *State v. Groff*, 323 N.W.2d 204, 210 (Iowa 1982).

Bolin's inclusion of the police report on the initial investigation and Duff's handwritten statement clearly indicate that Duff imparted the information to Bolin, and that she allegedly had received it from Wollard, who had been aware of the initial investigation. Both Duff and Wollard were named in the statement. Looking at the affidavit and its accompanying appendices, the issuing magistrate no doubt knew where Bolin had obtained his facts, and that they were second-level hearsay. Bolin's mischaracterization of the facts as they appear on the face of the form affidavit is therefore at most negligence, since the truth about Bolin's source was apparent to the magistrate. *Groff*, 323 N.W.2d at 210.

In addition, the magistrate had to be aware of all the circumstances surrounding the source of the information, including the facts that Duff had not personally seen the control box in Niehaus's possession, that Duff had a financial interest in deflecting blame for its loss, and that Niehaus had been investigated but not charged subsequent to Duff's original theft report. In other words, the magistrate knew with complete accuracy from the warrant and its accompanying documents all the relevant facts and circumstances known to Bolin.

The district court's ruling at the suppression hearing that Bolin did not act with reckless disregard for the truth is correct.

### III. *The Gates Standard.*

█ We previously noted that Niehaus urges application of the *Aguilar–Spinelli* test to the warrant. This test required that an affiant present evidence of credibility of a confidential police informant, as well as evidence of the reliability of the information in order to secure a warrant. *Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729; *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643–44. The purpose of the evidence required under *Aguilar–Spinelli*, was to assure the issuing magistrate of the reliability of the information upon which the warrant was issued. *Aguilar*, 378 U.S. at 110–11, 84 S.Ct. at 1512, 12 L.Ed.2d at 726; *Spinelli*, 393 U.S. at 415, 89 S.Ct. at 588–89, 21 L.Ed.2d at 643. In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983), the Supreme Court abandoned the rigid two-pronged *Aguilar–Spinelli* test in favor of a common-sense, totality-of-the-circumstances approach. This court adopted the *Gates* standard in *State v. Luter*, 346 N.W.2d 802, *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984).

The *Aguilar–Spinelli* line of cases were commonly applicable in instances where the informer was a confidential source. *See, e.g., Aguilar*, 378 U.S. at 113–14, 84 S.Ct. at 1513–14, 12 L.Ed.2d at 727–29. Neither Duff nor Wollard can be categorized as a confidential police informant. Both are more properly categorized as "citizen informants." A citizen informant is ordinarily defined as a person who is a witness to or a victim of a crime. *See* J. Hall, Jr., *Search and Seizure*, 5:31, 169 (1982). This court has adopted the position that information imparted by a citizen informant is generally reliable. *State v. Post*, 286 N.W.2d 195, 200 (Iowa 1979).

█ The statement is merely a presumption, however, and not a per se rule. As we noted in *Post*, the reliability of a citizen informant is generally shown " 'by the very nature of the circumstances under which the incriminating information became known.' " *Id.* at 200 (quoting *State v. Drake*, 224 N.W.2d 476, 478 (Iowa 1974)). Implicit in this construction is the idea that, even where a citizen informant is involved, a common-sense analysis of the totality of the circumstances must be applied to assess the reliability of the information. *Cf. Gates*, 462 U.S. at 227–28, 103 S.Ct. at 2326, 76 L.Ed.2d at 541–42 (anonymous tip

as source of information tested by totality of circumstances approach). We think that this approach is applicable under most circumstances, since "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544.

While the legal test for determining the validity of the warrant was substantially altered by *Gates*, its purpose was not. That purpose is to insure, within the context of a probable cause determination, that a neutral magistrate be presented with enough information regarding the "veracity" and "basis of knowledge" of the informant to determine that there is a fair probability the information is truthful. *Gates*, 462 U.S. at 238–40, 103 S.Ct. at 2332–333, 76 L.Ed.2d at 548–49. Instead of relying upon specific evidence of the informant's credibility and reliability, as required by narrow application of *Aguilar–Spinelli*, *Gates* allows the magistrate to look at all the circumstances set forth in the application, including independently developed corroborative evidence. *Id.* at 239–40, 103 S.Ct. at 2333, 76 L.Ed.2d at 549–50. *Gates* does not give either the affiant or the magistrate carte blanche to ignore credibility entirely.

■ The need for a neutral and detached magistrate to independently evaluate credibility and reliability is still a vital element of the fourth amendment warrant requirement. *Id.* at 240, 103 S.Ct. at 2333, 76 L.Ed.2d at 549. An application must present the issuing magistrate with a substantial basis to make reasonable inferences as to probable cause. *State v. Luter*, 346 N.W.2d 802, 808 (Iowa 1984). Implicitly, in attempting to show the probability that criminal activity is occurring, an affiant is under the obligation to provide sufficient confirmation of information an informant has provided. *See Aguilar*, 378 U.S. at 113–14, 84 S.Ct. at 1513–14, 12 L.Ed.2d at 1513–14; *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). There is a preference for warrants and, consistent with *Gates*, we construe

them in a common sense manner, resolving doubtful cases in favor of their validity. *States v. Sykes*, 412 N.W.2d 578, 581 (Iowa 1987).

■ The fact that Duff, rather than Wollard herself, spoke with Bolin is of some importance. The magistrate's determination of the reliability of the information had to take into account two levels of hearsay. Although the fact that some information in the warrant application is double hearsay does not necessarily invalidate a warrant, *State v. Bishop*, 387 N.W.2d 554, 557 n. 1 (Iowa 1986), caution should be exercised in issuing a warrant based almost solely upon such information. The magistrate must be presented with a means of assessing the credibility of both the individual who spoke with the affiant, as well as a means of assessing the initial source of the information. *See United States v. Smith*, 462 F.2d 456, 460 (8th Cir.1972). First, the magistrate was required to find substantial evidence of Duff's credibility based on a common sense totality-of-the-circumstances approach. Secondly, applying the same approach, the magistrate had to determine Wollard's credibility. *Smith*, 462 F.2d at 460.

■ Factors tending to enhance informant credibility include past reliability, the fact that the informant was named, whether the informant directly witnessed the crime or fruits of it in the possession of the accused, the specificity of the facts detailed by the informant, whether the information furnished is against the informant's penal interest, whether the informant was trusted by the accused, and whether the information was not public knowledge. *State v. Weir*, 414 N.W.2d 327, 332 (Iowa 1987) (citations omitted). Both Duff and Wollard are named sources of information. Duff was the alleged victim of the crime and Wollard had sufficient knowledge of the facts of the alleged crime to have been aware that a cable control box was missing. In addition, Wollard purportedly witnessed these "fruits of the crime" in the possession of her friend, Niehaus.

Generally, where hearsay is present, external factors will also buttress the reliabil-

ity of both sources. *Id.* In this case, the State relies upon several such factors. Niehaus had been investigated in connection with the initial theft, and while she had not been charged, the police report appended to the warrant makes it clear that the investigators still considered her a suspect. In addition, Niehaus had the opportunity to take the control box. Wollard was also present in the place where the alleged theft occurred at the time it allegedly happened, and presumably would have been aware of the circumstances of the theft and what had been reported taken.

We note that none of these circumstances actually confirms any inculpatory element of the story Duff told to Bolin. While not required by the broad test of *Gates*, cases applying the standard have typically noted a strong correlation between details of the informant's story and independently developed corroborative information. *Gates* makes the point explicit by stating:

> [D]ecisions applying the totality-of-the-circumstances analysis ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work.

*Gates*, 462 U.S. at 241, 103 S.Ct. at 2334, 76 L.Ed.2d at 550.

In *Gates*, for example, many details of an anonymous tip were independently confirmed by police observation of the suspects. *Gates*, 462 U.S. at 243–46, 103 S.Ct. at 2234–36, 76 L.Ed.2d at 551–53, *see United States v. Vaughn*, 830 F.2d 1185, 1187 (D.C.Cir.1987) (tip related by informant corroborated by second source); *United States v. Laws*, 808 F.2d 92, 97 (D.C.Cir. 1986) (*Gates* analysis emphasizes importance of independent police work corroborating details of informant's story). Cases decided by this court under the *Gates* standard also have generally turned upon the existence of sufficiently detailed corroboration of some elements of the informant's tip. *E.g., State v. Swaim*, 412 N.W.2d 568, 573 (Iowa 1987) (independent police observations confirm substantial details of tip); *State v. Bousman*, 387 N.W.2d 605, 608–09 (Iowa 1986) (same).

Independent corroboration of the *inculpatory* details of an informant's tip is not, however, mandatory. In *Gates*, the details confirmed by the police were not, in and of themselves, inculpatory. *Gates*, 462 U.S. at 243–46, 103 S.Ct. at 2234–36, 76 L.Ed.2d at 551–53; *see also, Weir*, 414 N.W.2d at 332 (corroboration of some details of informant's tip, though not incriminating, strengthen informant's claim to veracity). All that is required is that the circumstances surrounding the story, when taken together, are sufficient to support a determination of probable cause. Here, Bolin's verification of the fact that Duff had previously reported the theft, and that Niehaus was present at the time and place that the theft occurred, strengthened Duff's claim to veracity. We are convinced that the totality of the circumstances yielded a sufficient basis for the magistrate's conclusion that probable cause existed. Accordingly, we affirm the judgment . of the district court.

AFFIRMED.