# IN THE COURT OF APPEALS OF IOWA

No. 17-0960
Filed May 15, 2019

**SPENCER A. PIERCE,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

Spencer Pierce appeals the denial of his application for postconviction

relief. **AFFIRMED.**

Heidi Young of Parrish Kruidenier Dunn Boles Gentry Brown & Bergmann

L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant

Attorney General, for appellee State.

Considered by Potterfield, P.J., Bower, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**CARR, Senior Judge.**

Spencer A. Pierce appeals the denial of his application for postconviction relief (PCR). He argues his trial counsel was ineffective for failing to take several actions: (1) file a motion to suppress evidence from the search of an apartment; (2) properly argue the motion to suppress evidence from the search of a vehicle; (3) investigate a confidential informant; and (4) prepare for trial. We find Pierce has not shown prejudice by proving, but for counsel's claimed errors, he would have refused the plea bargain and proceeded to trial. Furthermore, he has not proven: (1) the warrant to search the residence was impermissibly tainted by evidence from an illegal search and seizure or from inaccuracies in the application; (2) the warrant to search the vehicle was improperly rejected or the vehicle would not run properly with the evidence in place; (3) evidence from the confidential informant was beneficial to him; or (4) a lack of preparation for trial by counsel caused him to plead guilty. Therefore, we affirm.

## I.     Background Facts and Proceedings

On June 7, 2013, Des Moines police observed Pierce driving a Dodge Durango. Officers were searching for a similar Durango, Deanna Hood, and a man matching Pierce's appearance named "Spence" or "Spencer" in connection with a murder the previous day. Officers had also recently seen the Durango while investigating drug activity. An officer approached Pierce as he exited the Durango at an apartment complex. Pierce told the officer his name was "Spencer" and he lived in apartment twenty-three in the complex. The officer then detained him.

Detective Brad Youngblut, who had been investigating the murder, soon arrived at the complex. He spoke to Pierce, who "was not completely

uncooperative, but he wasn't exactly forthcoming." From their conversation, Detective Youngblut determined Hood was likely in apartment twenty-three. Without Pierce's consent, officers took Pierce to the apartment in search of Hood. No one answered when the officers knocked on the apartment door, so they used Pierce's keys to unlock the door. As officers used the correct key, Pierce yelled, "Flush the weed. They're coming in." Officers then transported Pierce and Hood to the police station for further questioning. Both at the apartment complex and the police station, Pierce said he wanted counsel. He was later held in jail on a parole violation.

That same day, officers applied for—and received—a search warrant for Pierce's apartment and the Durango. Inside the apartment, officers found drugs and related paraphernalia, including baggies containing marijuana and methamphetamine. Officers also impounded the Durango that day.

On July 9, Pierce was charged in FECR267109 with five counts of controlled-substance violations resulting from the search of his apartment and the previous drug investigation. He was later charged in FECR268032 with murder and robbery.

On August 15, Detective Youngblut interviewed a confidential informant, who was imprisoned in Iowa. The informant said he met Pierce while they were in jail together. According to the informant, Pierce said drugs were still hidden in the "blower" of the Durango. Detective Youngblut requested a drug-sniffing dog to search the Durango, which remained in the impound facility. The dog detected an odor in the air filter in the open engine compartment. Officers opened the air filter and found baggies that appeared to contain methamphetamine. They returned the

Durango to its prior state and later collected the drugs under a search warrant for the vehicle. The search resulted in Pierce being charged with three additional counts of controlled-substance violations in FECR269461.

Pierce first proceeded to trial on the murder and robbery charges in FECR268032, and the jury returned a guilty verdict on both counts on November 6. On December 17, the court sentenced him to life in prison for murder in the first degree and twenty-five years in prison for robbery in the first degree, run concurrently.

Meanwhile, Pierce pled not guilty to the eight total controlled-substance charges in FECR267109 and FECR269461. His counsel filed a motion to suppress evidence from the search of the Durango, and he filed a pro se motion to suppress evidence from the search of the apartment. The court denied both motions. On December 9, Pierce changed his plea to guilty on one count of conspiracy to deliver a controlled substance, in violation of Iowa Code section 124.401(1)(b)(7) (2013), from FECR267109. As part of a plea agreement, the remaining charges in FECR267109 and FECR269461 were dismissed. The court sentenced him to twenty-five years in prison for the conspiracy, run concurrent to his sentences for murder and robbery. This court later found insufficient evidence to support the murder and robbery convictions, resulting in dismissal of those charges. *See State v. Pierce*, No. 13-2004, 2015 WL 3613329, at *5 (Iowa Ct. App. June 10, 2015); *see also State v. Hood*, No. 13-1998, 2015 WL 3613243, at *11 (Iowa Ct. App. June 10, 2015) (affirming the murder and robbery convictions and sentence of Hood).

On January 3, 2014, Pierce filed his application for postconviction relief from the conspiracy to deliver conviction. After amending his application twice, the matter proceeded to a hearing on October 17 and November 18, 2016. On June 6, 2017, the district court issued its ruling denying his application. He now appeals.

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). "In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant must prove both prongs by a preponderance of the evidence. *Id.* at 196. "In addition, we give weight to the lower court's findings concerning witness credibility." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). In the context of a claim of ineffective assistance rendered in advance of a plea of guilty, the applicant "must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## III. Prejudice

We need not always determine counsel's performance was deficient before examining the alleged prejudice suffered as a result of the deficiencies:

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984) (quoting *Strickland,* 466 U.S. at 697).

We note the deficiencies Pierce now claims to us were all known and the subject of discussion between him and his counsel before the plea. His counsel considered the validity of the search warrant for the apartment but ultimately chose not to file a motion to suppress, leaving Pierce to file his motion pro se. In particular, Pierce and counsel knew of the circumstances of his detention, the method of entry into the apartment, and discrepancies in the warrant application. The court heard and denied the motion to suppress the fruits of the warranted Durango search three days before the plea proceeding, as noted in the plea colloquy. Pierce's request for production of reports about the jail informant were outstanding and had not been honored, nor had his request for investigation of whether the Durango engine would operate with drugs concealed in the blower.

We also note that, at the time he entered his guilty plea on the drug charges here, he had been convicted of and was awaiting entry of a life sentence for murder and robbery. Should his convictions and sentence for murder and robbery stand on appeal, his drug charges would have little practical impact on the sentence actually served. However, should his appeal of the murder and robbery charges succeed, the plea bargain on offer provided him benefit. Sentences for the eight drug counts lodged against him—all felonies—in the absence of merger of conspiracy counts into their corresponding substantive offenses, potentially totaled well over one hundred years of incarceration if run consecutively. Should defense of these prove unsuccessful, a successful appeal of his murder conviction and pending life sentence would provide no benefit.

By agreeing to the plea bargain with the single controlled-substance charge, the State agreed to recommend a sentence with a one-third reduction in the minimum term of incarceration, a suspended minimum fine, and a term of incarceration run concurrently with his then-pending sentence for murder and robbery. The State also agreed to dismiss his remaining seven controlled-substance charges. This plea bargain conveyed a significant benefit to him, and he showed no hesitation to accept the bargain during his plea hearing. While he testified at his PCR hearing that he felt forced to accept the plea bargain, he must offer more than his own self-serving testimony to prove ineffective assistance. *See Dempsey v. State*, 860 N.W.2d 860, 869 (Iowa 2015).

Pierce has not carried his burden to prove, but for counsel's claimed errors, he would have refused the plea bargain and proceeded to trial. That said, there is logic in his point that if both searches were bad and, but for counsel's failure to file one motion to suppress and failure to properly present the other, all the evidence against him were suppressed, he would not have pled guilty to charges for which no admissible evidence existed. Such an evaluation squares with *Hill*, 474 U.S. at 59 ("In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."). We therefore proceed to consider whether he has proven his counsel breached an essential duty.

IV.     **Warrant to Search the Apartment**

*A. Warrantless search and seizure*

"Warrantless searches and seizures are per se unreasonable unless a recognized exception applies." *State v. McCoy*, 692 N.W.2d 6, 14–15 (Iowa 2005).

When officers detained Pierce at the apartment complex, the State had evidence Hood and the Durango were involved in a murder the previous day. This evidence created reasonable suspicion to legally detain Pierce as part of the investigation. *See id.* at 19. However, the reasonable suspicion ended when the State determined Hood was not with Pierce. *See id.* ("The detectives could certainly ask enough questions to dispel any notion that [the suspect] was in the vehicle. Once having learned the identity of the occupants, however, the reasonable scope of the intrusion ended."). Lacking probable cause for arrest, the detention then became an illegal seizure. *See id.* While the State does not explicitly concede this point, the State never offers an argument to support the lawfulness of his continued detention.

The State may have also violated Pierce's constitutional rights by failing to give *Miranda* warnings at the apartment complex and by continuing to question him after he invoked his right to counsel. *See State v. Peterson*, 663 N.W.2d 417, 423–27 (Iowa 2003) (citing *Miranda v. Arizona*, 384 U.S. 436, 473–79 (1966)). The record contains no indication Pierce voluntarily cooperated with the police, and Detective Youngblut acknowledged Pierce did not consent when they took him to the apartment. The State argues Pierce's statements at the apartment door to "flush the weed" were spontaneous and not affected by the lack of *Miranda* warnings. *See State v. Little*, 421 N.W.2d 172, 174 (Iowa 1988). However, the State does not explain how these statements are not a result of the earlier illegal seizure.

Any evidence obtained in an illegal search and seizure "may not form the basis of probable cause to issue a search warrant." *State v. Naujoks*, 637 N.W.2d

101, 111 (Iowa 2001). The warrant application includes a four-page single-spaced affidavit describing the evidence in support of the application. Even if we assume all evidence obtained after the initial, lawful detention is tainted and must be excised from the application, probable cause still exists to support the warrant. *See id.* A witness said the victim was arranging a drug deal shortly before the murder. The victim's phone shows it exchanged several calls and texts with a number associated with Hood, and these communications ended at the time of the murder. Surveillance video shows a vehicle matching the Durango around the time and location of the murder. Multiple witnesses said Hood and the victim were associates. Police had seen the Durango while surveilling drug activity, and Hood and "Spencer" were previously seen in the Durango. Officers could not find Hood at her last known addresses. The apartment complex owner confirmed Pierce is the tenant in apartment twenty-three. Because probable cause supports the warrant even without any potentially tainted evidence from the detention, Pierce's trial counsel did not breach an essential duty by failing to file a motion to suppress the warrant.

In reaching this conclusion, we do not minimize or condone the police conduct evident in this record. The apparent violations of Pierce's constitutional rights preceding the search of his apartment are particularly troubling. Our reservations notwithstanding, we conclude that, even if we exclude evidence so obtained, probable cause still exists to support the issuance of the search warrant.

### B. Inaccuracies in the warrant application

In *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978), the Supreme Court announced "a means to examine truthfulness of an affiant in presenting evidence

to a magistrate supporting issuance of a search warrant." *State v. Niehaus*, 452 N.W.2d 184, 186 (Iowa 1990).

> The inquiry adopted by *Franks* is limited to a determination of whether the affiant was purposely untruthful with regard to a material fact in his or her application for the warrant, or acted with reckless disregard for the truth. If the court finds that the affiant consciously falsified the challenged information, or acted with reckless disregard for the truth in his or her application for the warrant, the offensive material must be deleted and the remainder of the warrant reviewed to determine whether probable cause existed.

*Id.* at 186–87.

Pierce points to three inaccuracies in the warrant application. First, the application states a detective found a handwritten letter from Hood in the victim's home. No such letter is in the record, and the detective named in the application testified he did not recall finding such a letter. Second, the application states officers had seen Hood and "Spencer" in the Durango and had conducted controlled drug buys with Hood, "proving her to be a drug supplier." The officer investigating the drug activity testified officers had never seen Hood or Pierce in the Durango nor had they done a controlled buy with Hood or Pierce. Third, the application states Pierce told officers Hood was inside apartment twenty-three. Detective Youngblut testified no one explicitly told him Hood was inside the apartment.

Pierce has presented no evidence the affiant was "purposely untruthful," and he has not proven the affiant acted with "reckless disregard for the truth." *See id.* The affiant testified she gathered information for the application from several officers who worked the investigation and she was not directly involved with many of the investigatory steps. Nevertheless, everything in the affidavit is "true and

correct, as far as [she] know[s]." While the challenged statements inaccurately describe how officers learned the information, other evidence in the record shows officers learned the substance of these statements from other sources. The affidavit refers to a neighbor who saw a handwritten letter from Hood to the victim. The narcotics investigator testified he had seen the Durango during surveillance and a confidential informant told him Pierce and Hood were driving the Durango and supplying drugs. Detective Youngblut testified that, by talking to Pierce, he "determined that [Pierce] knew [Hood] was up in the apartment. He wouldn't fully admit it, but he wouldn't also deny it." Furthermore, even if we were to excise these statements from the affidavit, probable cause still supports the warrant as described above. Finally, trial counsel acknowledged discussing these inaccuracies with Pierce but decided it would be "a mistake to . . . point out every little discrepancy." "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma*, 626 N.W.2d at 143. Therefore, Pierce's trial counsel did not breach an essential duty by failing to challenge the inaccuracies in the warrant application.

### V. Warrant to Search the Durango

#### *A. Standing to challenge the search of the Durango*

In challenging the warrant to search the Durango, Pierce claims the police conducted an illegal search when it used the drug-sniffing dog. Without the evidence from this illegal search, he argues, the warrant lacks probable cause. *See Naujoks*, 637 N.W.2d at 111. The district court rejected his motion to suppress evidence from the search of the Durango because (1) he had no standing to challenge the search; (2) he had no expectation of privacy in the Durango after it

was previously searched pursuant to a warrant; and (3) even without the challenged information, probable cause supports the warrant. In arguments to us, Pierce only claims his trial counsel was ineffective for failing to prove he had standing to challenge the search. Regardless of whether he had standing to challenge the search of the Durango, he does not address the two other grounds the district court found when rejecting his motion to suppress. Therefore, even assuming he had standing to challenge the search, Pierce has not shown his counsel breached an essential duty by failing to do so.

*B. Investigation into drugs found in the Durango*

Pierce also argues his counsel was ineffective for failing to fully investigate the drugs found in the Durango, including whether the Durango would operate with the baggies of drugs found in the air filter. Apparently, he believes such an investigation would show the drugs could not have been in the air filter when police impounded the Durango.

Pierce bears the burden of proving ineffective assistance. *See Maxwell*, 743 N.W.2d at 196. Pierce testified he did not believe the Durango was drivable with baggies of drugs in the air filter and the bags looked clean like they had recently been placed in the filter. He also presented two witnesses with auto mechanic experience who testified they did not believe the Durango would run with baggies of drugs in the air filter. However, one of his witnesses acknowledged the Durango could run relatively well if the baggies remained in place, and the photographs he reviewed provided no indication the baggies had been sucked into the air filter. The record also contains evidence of the security at the impound facility and the confidential informant's statements that Pierce knew the drugs were

hidden in the "blower" of the Durango. Furthermore, Pierce's trial counsel testified he considered this evidence and decided not to investigate whether the Durango would run with drugs in the air filter, and such strategic decisions are typically not ineffective assistance. *See Ledezma*, 626 N.W.2d at 143. Considering all evidence in the record, Pierce has not carried his burden to prove his counsel breached an essential duty by failing to investigate the drugs in the Durango.

### VI. Evidence Related to the Confidential Informant

On January 8, 2017, after the PCR hearing, Pierce filed additional evidence with the trial court, including a transcript of Detective Youngblut's conversation with the confidential informant and Detective Youngblut's reports of the conversation and ensuing investigation. Pierce also filed an affidavit from himself, claiming the State had only recently provided this evidence and he would not have pled guilty if he had had this evidence.[1]

Pierce argues the lateness of this evidence resulted from ineffective assistance. However, he does not point to any exculpatory information in this evidence. Therefore, he has not carried his burden to prove his counsel breached an essential duty by failing to obtain information about the confidential informant.

Pierce also refers to the lateness of this evidence as a *Brady* violation, which is a due process violation resulting from the suppression of evidence. *See DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). To establish a due process violation, Pierce "must prove by a preponderance of the evidence '(1) the prosecution suppressed evidence; (2)

---

[1] In its brief, the State acknowledges it provided this evidence to Pierce after the PCR hearing.

the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt.'" *Id.* (quoting *Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003)). Even if we assume the State suppressed the evidence, Pierce has not pointed to any information in the evidence that is favorable to him or material to the issue of guilt. *See id.* Therefore, Pierce has not carried his burden to prove the State violated his right to due process by suppressing evidence related to the confidential informant.

## VII. Preparation for Trial

Finally, Pierce argues the substitution of his counsel a week prior to his scheduled trial resulted in ineffective assistance because his new counsel was not prepared for trial. He does not point to any specific actions his new counsel did or did not take that constitute ineffective assistance. Rather, he generally claims the substitution resulted in him "believing his only option was to enter a guilty plea." A guilty plea must be intelligently and voluntarily made, and counsel's failure to challenge an insufficient plea is a breach of an essential duty. *Straw*, 709 N.W.2d at 133. The only evidence Pierce's plea was not intelligent and voluntary is his testimony at the PCR hearing. Prior to accepting Pierce's plea, the court engaged him in a full colloquy—which included an affirmation that he was satisfied with his new counsel—to verify his plea was intelligent and voluntary. Therefore, he has not shown his counsel breached an essential duty in failing to prepare for trial.

## VIII. Conclusion

Pierce has not shown either prejudice or breach of an essential duty because his trial counsel failed to file a motion to suppress evidence from the search of the apartment, properly argue the motion to suppress evidence from the

search of the Durango, obtain evidence related to the confidential informant, or prepare for trial.  Therefore, we affirm.

**AFFIRMED.**