**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Thomas Joseph PAQUIN and Christina
Ann Ammon–Paquin,
Defendants–Appellees.**

**No. 91SA94.**

Supreme Court of Colorado,
En Banc.

June 10, 1991.

Stuart A. VanMeveren, Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Jolene L. Carman, Deputy Dist. Atty., Fort Collins, for plaintiff-appellant.

Michael E. Manning, Fort Collins, for defendant–appellee Thomas Joseph Paquin.

David F. Vela, Colorado State Public Defender, Anne W. Williams, Deputy State Public Defender, Fort Collins, for defendant-appellee Christina Ann Ammon–Paquin.

Justice QUINN delivered the opinion of the Court.

The People in this interlocutory appeal challenge the district court's suppression of marihuana plants and drug paraphernalia seized during a search pursuant to warrant and a custodial statement made by one of the defendants during the course of the search. The district court ruled that the affidavit in support of the search warrant failed to establish probable cause and that the custodial statement was the fruit of the illegal search. We reach a contrary result and reverse the suppression ruling.

## I.

The defendants, Thomas Joseph Paquin and Christina Ann Ammon–Paquin, are charged in the District Court of Larimer County with cultivation of marihuana.[1] Thomas Joseph Paquin, in addition, is charged with possession of more than eight ounces of marihuana.[2] The charges are based on evidence obtained by the police during the execution of a search warrant at the defendants' residence in Wellington, Colorado, on October 2, 1990.

On October 1, 1990, Officer Rick E. Russell of the Larimer County Sheriff's Department filed an affidavit in support of a search warrant for a two-story, wood frame farm house and an adjacent shed located at 6605 East County Road 66, Wellington, Colorado. The affidavit recited the following facts in support of the application for the search warrant.

On September 28, 1990, a confidential informant contacted Detective Russell about illegal drug activities at the residence in question. The affidavit alleged that the informant had previously provided the Larimer County Sheriff's Department with reliable information in furtherance of criminal investigations and that this information resulted in at least one felony arrest. The informant, according to Detective Russell's affidavit, was familiar with marihuana, had observed marihuana when it was being grown, and had used it in the past. The informant told Officer Russell that during the week of September 24, 1990, he went to a residence near Wellington, Colorado, where he purchased several quarter-ounce bags of marihuana for $30 each from an adult male known to him as T.J. According to the affidavit, T.J. obtained the marihuana from a room inside the residence and then placed it in plastic sandwich bags and delivered it to the informant. T.J. then took the informant to a metal shed located near the house where the informant observed numerous marihua-

---

1. § 18–18–106(8)(a), 8B C.R.S. (1986).

2. § 18–18–106(4)(b), 8B C.R.S. (1986).

na plants which were approximately six feet in height and were beginning to bud. The shed was equipped with sunlamps, and the marihuana plants were growing on the dirt floor of the shed.

The affidavit also alleged that T.J. lived with a female and several small children. The informant did not know the address of the residence, but provided Officer Russell with directions to the location. Officer Russell stated in his affidavit that he followed the directions and was led to 6605 East Larimer County Road 66, where he observed "a residence, outbuildings, and an abandoned vehicle similar to those described to me by the informant." The affidavit alleged that Officer Russell checked the utility records of the Poudre Valley REA and determined that electric utility service was listed in the name of "Christina A. Amman." Based on the affidavit, a district judge issued a search warrant on October 1, 1990, for "farm property located at 6605 E. County Rd. 66, Wellington, Colorado."

Officer Russell and other officers executed the search warrant on the morning of October 2, 1990, and seized several marihuana plants, a plastic tray and a cardboard box containing loose marihuana, marihuana seeds, two ultraviolet grow lamps, and other drug paraphernalia. During the course of the search Christina Ann Ammon–Paquin, after being advised of her *Miranda* rights,[3] told Officer Russell that she knew the marihuana plants were present on the premises and that Thomas Joseph Paquin was the one responsible for growing them.

Each defendant filed a motion challenging the veracity of the affidavit, *see People v. Dailey*, 639 P.2d 1068 (Colo.1982), and

also a motion to suppress any evidence seized during the search on the basis that Officer Russell's affidavit failed to establish probable cause. Prior to ruling on the motion to suppress, the district court interviewed the informant *in camera* and determined that the statements in the affidavit were basically consistent with the information which the informant gave to Officer Russell and that it would be inappropriate to order the disclosure of the informant's identity.[4]

The court then granted the motion to suppress. The court ruled that, except for the statement in the affidavit relating to the location of the buildings, there was no corroboration by independent investigation of the informant's statements and that the affidavit, when analyzed under the totality-of-the-circumstances test, failed to satisfy the constitutional standard of probable cause. The court accordingly suppressed all property seized during the search and also suppressed the statement made by Christina Ann Ammon–Paquin to Officer Russell as the fruit of an illegal search.

The People claim that the district court applied an unduly rigid standard of probable cause when it ruled that, except with respect to the location of the buildings, there was no corroboration by independent police investigation of the contents of the informant's tip. Corroboration of an informant's tip by independent police investigation, according to the People, is not essential to a probable-cause determination under the totality-of-the-circumstances test. We agree with the People's argument and conclude that the affidavit satisfied the constitutional standard of probable cause.[5]

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** At the preliminary hearing, Officer Russell testified that the informant told him that there were two six-foot marihuana plants inside the shed, but he (Officer Russell) misunderstood the informant and thought that he said "two hundred plants." The district court considered this discrepancy in ruling on the defendants' veracity challenge to the affidavit and concluded that "the information provided by the informant was

primarily consistent with that attributed to him by Detective Rick Russell."

**5.** The People in their brief also argue that the district court erred in refusing to apply the good-faith exception to the exclusionary rule, *see* § 16–3–308, 8A C.R.S (1986), in resolving the suppression motion. Our determination that the affidavit satisfies the constitutional standard of probable cause renders it unnecessary to address the applicability of the good-faith exception to this case.

## II.

█ Whether an affidavit based on information provided by a confidential informant satisfies the constitutional standard of probable cause must be evaluated on the basis of the totality-of-the-circumstances test formulated by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Prior to *Gates,* Fourth Amendment jurisprudence required a probable-cause determination to be made on the basis of the two-pronged test formulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under the *Aguilar–Spinelli* test, a reviewing court was required to resolve the issue of probable cause by determining, first, whether the affidavit contained sufficient facts from which the issuing judge could determine independently whether the informant had an adequate basis in knowledge for an allegation that incriminating evidence will be found at the place to be searched, and, second, whether the affidavit contained sufficient information to enable the issuing judge to determine whether the informant was credible or his information reliable. *Spinelli,* 393 U.S. at 412–13, 89 S.Ct. at 586–87; *Aguilar,* 378 U.S. at 114–15, 84 S.Ct. at 1514. The Supreme Court in *Gates* abandoned the *Aguilar–Spinelli* two-pronged test and adopted in its place the totality-of-the-circumstances test for the following reasons:

> [T]he "two-pronged test" directs analysis into two largely independent channels— the informant's "veracity" or "reliability" and his "basis of knowledge." ... There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.... 

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.... Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability— we have found rigorous scrutiny of the basis of his knowledge unnecessary.... Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the "two-pronged test" has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.

462 U.S. at 233–35, 103 S.Ct. at 2329–30 (citations and footnotes omitted).

█ Pursuant to the *Gates* standard, therefore, a sufficiently detailed description of the informant's observations, or an averment outlining independent corroboration of some of the details of the tip, may be sufficient to permit both an issuing judge and a reviewing court to conclude that the informant had access to reliable information about the illegal activities described in the affidavit. *See Alabama v. White,* 496 U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). *Gates* made clear that the task of a judge issuing a search warrant is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332. The duty of a court reviewing the sufficiency of an affidavit on a motion to suppress is simply to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Id.* at 238–39, 103 S.Ct. at 2332. In making that determination, a reviewing court must restrict itself to the four corners of the affidavit and must analyze the affidavit in a nontechnical and common-sense fashion. *Id.* at 235–36, 103 S.Ct. at 2330–31; *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). We have adopted the totality-of-the-circumstances test formulated in *Gates* in construing the Search and Seizure Clause of the Colorado Constitution, *People v. Pannebaker,* 714 P.2d 904, 907 (Colo. 1986); *accord, e.g., People v. Arellano,* 791 P.2d 1135, 1138 (Colo.1990); *People v. Grady,* 755 P.2d 1211, 1215–16 (Colo.1988), and it is that standard which controls the resolution of the issue before us.

### III.

■ The fundamental flaw in the district court's suppression ruling is that the court elevated the element of corroboration by independent police investigation to a constitutional necessity. While police corroboration of significant aspects of an informant's tip is an important factor in the probable-cause calculus, *see, e.g., Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2333–34; *People v. Abeyta,* 795 P.2d 1324, 1329 (Colo.1990); *Grady,* 755 P.2d at 1215, it is not an indispensable component of the probable-cause determination. Rather, what is critical under the totality-of-the-circumstances test is that there be a substantial basis in the affidavit itself for the issuing judge's determination that there are reasonable grounds to believe that contraband or other incriminating evidence will be found at the place to be searched. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. Such substantial basis, as previously discussed, is not inexorably tied to any one element, nor is any single element a *sine qua non* of the probable-cause determination.

■ In our view, the affidavit of Officer Russell, when read in a common sense fashion and when measured against the totality-of-the-circumstances test, satisfies the constitutional standard of probable cause. The affidavit contains a direct statement that the informant had used marihuana on prior occasions and was familiar with the characteristics of marihuana plants, that four days prior to contacting Officer Russell the informant was present at the residence of a person by the name of T.J. and purchased several quarter-ounce bags of marihuana from T.J., and that T.J. showed the informant numerous marihuana plants growing inside a shed adjacent to the residence. The affidavit also contains other statements of specific detail regarding the informant's observations on September 24, 1990. These observations include T.J.'s obtaining the marihuana sold to the informant from a room inside the house, the presence of an adult female and several children in the residence, and a description of the general location of and directions to the residence. The affidavit also states that the informant provided information on past occasions that resulted in at least one felony arrest. Although the statement with respect to the informant's reliability is somewhat thin, in that it does not specify how recently this information was given, it nonetheless provides some support for inferring the veracity of the tip given to Officer Russell regarding T.J.'s illegal drug activities.

Finally, the affidavit establishes some corroboration by independent police investigation of some aspects of the informant's tip. The affidavit alleges that Officer Russell followed the directions given to him by the informant and by so doing was able to observe "a residence, outbuildings, and an abandoned vehicle similar to those described ... by the informant." Although Officer Russell's corroboration was limited to the location and description of the premises, and did not extend to that part of the tip concerning the alleged illegal drug activities of the occupants, the officer's limited corroboration contributed some modest measure of credibility to the informant's report concerning the illegal drug activity

observed by the informant inside the dwelling. *See Arellano*, 791 P.2d at 1139.

We are satisfied that, under the totality-of-the-circumstances test of *Gates*, Officer Russell's affidavit establishes probable cause for the issuance of the search warrant, and that the district court erred in ruling to the contrary. The suppression ruling is accordingly reversed and the case is remanded to the district court for further proceedings.