**The PEOPLE of the State of Colorado, Plaintiff–Appellant/Cross–Appellee,**

v.

**Donald Hugh PATE, Defendant–Appellee/Cross–Appellant.**

No. 93SA155.

Supreme Court of Colorado, En Banc.

July 11, 1994.

Rehearing Denied Aug. 8, 1994.

---

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol., Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Criminal Enforcement Section, Denver, John W. Suthers, Dist. Atty., Gordon R. Dennison, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant/cross-appellee.

David F. Vela, State Public Defender, Samuel Santistevan, Julie Iskenderian, Deputy State Public Defenders, Denver, for defendant-appellee/cross-appellant.

Justice MULLARKEY delivered the Opinion of the Court.

The People of the State of Colorado appeal the trial court's ruling that section 42-2-123.6, 17 C.R.S. (1993), requiring defendants convicted of certain drug offenses to surrender their drivers licenses to the court for forwarding to the Colorado Department of Revenue, violates the principle of separation of powers found in Article III of the Colorado Constitution.[1]  The defendant also filed a separate notice of appeal with the court of appeals challenging his convictions for possession of marihuana with intent to distribute and possession of between one and eight ounces of marihuana, on the ground that the trial court erred in denying his motion to suppress evidence seized from his residence pursuant to a search warrant.  We consolidated the two appeals[2] and, for the reasons stated below, reverse the trial court's ruling as to the constitutionality of section 42-2-123.6, affirm the trial court's judgment of conviction, and remand the case to the trial court for further proceedings consistent with this opinion.

I

On May 11, 1992, an anonymous caller (the informant) contacted Officer Thomas A. Lehmann (Officer Lehmann) of the Colorado Springs Police Department to report that an individual by the name of Michael Acosta (Acosta) had been arrested one week earlier on outstanding warrants from New Mexico. The informant specified that the warrants had been for narcotics offenses.  She also reported to Officer Lehmann that, according to a friend of hers, whose name she would not divulge, Acosta called his girlfriend, Lola Schafer, to request that she arrange to have

---

1. Because the decision below involved a determination of the constitutionality of a statute, this court has jurisdiction to resolve the appeal.  *See* § 13-4-102(1)(b), 6A C.R.S. (1987).

2. *See* § 13-4-109, 6A C.R.S. (1987).

marihuana removed from his residence because the police "were on to him." The informant told Officer Lehmann that her friend had overheard a telephone conversation between Schafer and someone named "Donny." Schafer was using the friend's phone at that time. The informant stated that her friend saw Schafer dial the number "260–1716" and speak to a person she believed to be "Donny." During that conversation, the friend heard Schafer arrange for Donny to pick up thirty-three pounds of marihuana from Acosta's residence and store it at Donny's residence. The informant stated that she had not previously met Donny or Schafer and did not know where Donny lived.

In response to this tip, Officer Lehmann called 260–1716 and spoke to a woman who identified herself as "Mrs. Pate" and stated that she lived at 2853 Buttermilk Circle.[3] When Officer Lehmann checked the utilities listing for 2853 Buttermilk Circle, he found that it was registered under the names "Donald H. Pate" and "Anita C. Pate." He then checked the criminal history of a "Donald Hugh Pate" and found a traffic record but no criminal arrests. He also checked the criminal history of a "Michael Anthony Acosta" and found that he had been arrested on May 9, 1992, for active warrants from New Mexico. Those warrants were for the possession of marihuana with the intent to distribute.[4] Finally, Officer Lehmann called the El Paso Criminal Justice Center and confirmed that Acosta was incarcerated at that facility.

Based upon the informant's tip and his own efforts to corroborate that information, Officer Lehmann applied for and received a warrant to search the Pate residence at 2853 Buttermilk Circle.[5] Officer Lehmann and other police officers then went to the Pate residence and asked for Donald Pate (Pate). He was not home, however, and Officer Lehmann spoke with his wife. Prior to presenting the search warrant, Officer Lehmann told Mrs. Pate that he had information indicating that marihuana could be found in her home and asked for her consent to search the residence. Mrs. Pate apparently agreed and signed a written consent-to-search form.[6] Officer Lehmann then presented her with the search warrant and Mrs. Pate told him that the marihuana was stored in the crawlspace of an extra bedroom. The officers found approximately eight ounces of marihuana packaged for street sale at that location.

Soon thereafter, Pate arrived at the residence and was arrested and taken into custody. After waiving his *Miranda*[7] rights, Pate told the police that he had been storing the marihuana for a friend named "Lola" and that he was not a drug dealer. Pate was subsequently charged with possession of between one and eight ounces of marihuana[8] and possession of marihuana with the intent to sell and distribute.[9]

Prior to trial, Pate filed a motion to suppress evidence seized from his residence, claiming that the search warrant was insufficient on its face and that Officer Lehmann's affidavit in support of the search warrant failed to set forth probable cause to believe that contraband was located at Pate's residence. Following a hearing on this issue, the trial court denied the motion, stating that "it is clear to the Court that there is sufficient

3. The factual details regarding Officer Lehmann's efforts to corroborate the informant's tip are set forth in his affidavit in support of the search warrant.

4. Acosta's record also indicated that he had been arrested previously for conspiracy to sell marihuana, felony larceny and first degree criminal trespass, and that Crime Stoppers had received an anonymous report that an individual had been purchasing marihuana from Acosta on a regular basis.

5. Approximately six hours elapsed between the time Officer Lehmann received the anonymous tip and when he applied for the search warrant. Judge Sletta of the El Paso County Court issued the search warrant on the evening of May 11, 1992.

6. The question of whether Mrs. Pate's consent was validly obtained prior to the presentation of the search warrant was not addressed by the trial court. Although Pate raised this issue initially in his motion to suppress, the parties did not argue the consent issue once the trial court concluded that the search warrant was validly issued.

7. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8. § 18–18–106(4)(b), 8B C.R.S. (1986).

9. § 18–18–106(8)(b), 8B C.R.S. (1986).

corroboration to establish that the anonymous caller was reliable and that there is a fair probability that contraband would be found at the residence to be searched."

Pate waived his right to a trial by jury, and, after a trial to the court on March 3, 1993, he was convicted of possession of marihuana with the intent to distribute, a class four felony. The trial court also found that although the prosecution had proved that Pate possessed marihuana with the intent to distribute, it failed to prove beyond a reasonable doubt that the net weight of the marihuana, excluding packaging materials and contaminates, was greater than eight ounces. The trial court therefore convicted Pate of possession of between one and eight ounces of marihuana, a class one misdemeanor.

After a sentencing hearing on April 7, 1993, the trial court sentenced Pate to three years of probation. At that hearing, the prosecution requested that Pate be ordered to surrender his driver's license to the trial court pursuant to section 42–2–123.6. The trial court refused, however, ruling that it was an unconstitutional violation of the separation-of-powers doctrine to compel the court to take a convicted defendant's driver's license for forwarding to the Department of Revenue, because it would cause a judicial officer to become a bailee acting for the benefit of the executive branch. After a hearing on the prosecution's motion for reconsideration, the trial court adhered to its prior ruling that section 42–2–123.6 was unconstitutional.

The prosecution then filed a timely notice of appeal with this court, pursuant to section 16–12–102(1), 8A C.R.S. (1986 & 1993 Supp.), and C.A.R. 4(b)(2). Pate also filed a timely notice of appeal to the court of appeals, challenging the trial court's judgment of conviction. This court granted Pate's motion to consolidate the two appeals.

## II

■ First we will address Pate's argument that the trial court committed reversible error in denying his motion to suppress the marihuana seized at his residence pursuant to the search warrant. Pate claims that Officer Lehmann's affidavit in support of the search warrant did not contain sufficient information to support a finding of probable cause. We disagree.

■ Probable cause for a search warrant exists when the affidavit in support of the warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched. *People v. Arellano,* 791 P.2d 1135, 1137 (Colo. 1990); *People v. Quintana,* 785 P.2d 934, 937 (Colo.1990). Whether an affidavit based on information provided by a confidential informant satisfies the constitutional standard of probable cause must be evaluated on the basis of the totality-of-the-circumstances test formulated by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (abandoning the two-pronged *Aguilar–Spinelli* test). *People v. Turcotte–Schaeffer,* 843 P.2d 658, 660 (Colo.1993); *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986) (adopting the *Gates* test in construing the Search and Seizure Clause of the Colorado Constitution). The *Gates* Court emphasized that a judge or magistrate reviewing an application for a search warrant should make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332.

■ Under the totality-of-the-circumstances test, "an informant's account of criminal activities need not establish the informant's basis of knowledge, so long as the informant's statement is sufficiently detailed to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities reported to the police." *People v. Abeyta,* 795 P.2d 1324, 1327–28 (Colo.1990). Moreover, even if an affidavit does not establish the informant's basis of knowledge or the veracity of the reported information, police corroboration of some of the information provided by the informant may be sufficient to support a find-

ing of probable cause, even where all of the corroborated details relate to noncriminal activity. *People v. Leftwich,* 869 P.2d 1260, 1267–68 (Colo.1994); *Turcotte–Schaeffer,* 843 P.2d at 661; *see also People v. Paquin,* 811 P.2d 394, 397 (Colo.1991) ("A sufficiently detailed description of the informant's observations, or an averment outlining independent corroboration of some details of the tip, may be sufficient to permit both an issuing judge and a reviewing court to conclude that the informant had access to reliable information about the illegal activities described in the affidavit."). As we previously held in *Abeyta,* "because an informant is shown to be right about some things, [s]he is probably right about other facts that [s]he has alleged, including the claim that the object of the tip is engaged in criminal activity." 795 P.2d at 1327.

A magistrate's probable cause determination is given great deference and is not reviewed *de novo. Leftwich,* 869 P.2d at 1266. Rather, the duty of a court reviewing the sufficiency of an affidavit on a motion to suppress is simply to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332–33; *Turcotte–Schaeffer,* 843 P.2d at 660. In making that determination, a reviewing court must restrict itself to the four corners of the affidavit and must analyze the affidavit in a "nontechnical and common sense fashion." *Paquin,* 811 P.2d at 398; *see also People v. Lubben,* 739 P.2d 833, 834–35 (Colo.1987). Finally, we have held that "doubts must be resolved in favor of magistrates' determinations of probable cause in order to avoid giving police an incentive to resort to warrantless searches in the hope of relying on consent or some other exception to the warrant requirement that might develop at the

time of search." *Abeyta,* 795 P.2d at 1327–28; *People v. Varrieur,* 771 P.2d 895, 897 (Colo.1989); *see also Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

In this case, Pate advances several reasons why, in his view, Officer Lehmann's affidavit did not provide the issuing judge with a substantial basis for concluding that probable cause existed to search Pate's home. His first claim is that the anonymous tip, by itself, failed to provide the kind of "detailed, intimate knowledge" about Pate and his activities which would indicate that the informant knew Pate personally.[10] Therefore, according to Pate, the information given by the first-time informant lacked the necessary indicia of reliability to support a finding of probable cause. We are not persuaded.

It is important to note at the outset that there is no requirement under the *Gates* totality-of-the-circumstances test that an anonymous tip contain a highly detailed description of a suspect or the alleged criminal activity in which he or she is involved. Rather, the amount of detail provided in the tip is merely one of several factors which an issuing court should consider in determining the reliability or veracity of that information. *Gates,* 462 U.S. at 244, 103 S.Ct. at 2335; *see also Paquin,* 811 P.2d at 397. Yet, where the details provided by the informant indicate familiarity with the implicated individual or the alleged criminal activity or are facts which are difficult to obtain, the issuing judge may properly conclude that it was not unlikely that the informant had access to reliable information about the alleged illegal activities. *Gates,* 462 U.S. at 245, 103 S.Ct. at 2335–36; *Leftwich,* 869 P.2d at 1268.

In this case, the details provided by the informant included: (1) the type of contra-

10. Pate claims, for example, that the informant's information was presumptively unreliable because it constituted "double hearsay" and was not based on the informant's direct observations. However, "[w]hen a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as other information in the affidavit in order to determine whether it can be reasonably inferred 'that the informant had gained his information in a reliable way.'" *United States v. Smith,* 462 F.2d 456, 459 (8th Cir.1972); *accord United States v. Townsley,* 843 F.2d 1070, 1078 (8th Cir.1988); *United States v. McCoy,* 478 F.2d 176, 179 (10th Cir.1973). Under the *Gates* test, independent corroboration of details provided by an informant is one way to establish the reliability of double hearsay information. *See State v. Niehaus,* 452 N.W.2d 184, 190–91 (Iowa 1990).

band involved (marihuana); (2) the precise amount of marihuana allegedly located in "Donny's" residence (thirty-three pounds); (3) the role allegedly played by "Donny" in this drug scheme (storing the marihuana for Michael Acosta while Acosta was incarcerated); (4) "Donny's" phone number (260–1716); (5) the name of Acosta's girlfriend ("Lola Schafer"); and (6) the fact that Acosta recently had been arrested on outstanding New Mexico warrants for drug offenses. On the one hand, the reference to thirty-three pounds of marihuana, the information about Acosta's arrest on New Mexico warrants, and the phone number for "Donny" are fairly specific factual details.[11] Moreover, the facts about Acosta's arrest, although certainly discoverable as a matter of public record, constitute information which is not "easily obtained."[12] *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335–36. On the other hand, Officer Lehmann's affidavit expressly states that the informant had never met "Donny" nor did she know where "Donny" lived. In fact, it seems clear from the affidavit that even the informant's friend, the ear-witness to the alleged telephone conversation, knew little, if anything, about "Donny" except what she overheard from Schafer. Under these circumstances, we agree with Pate that the anonymous tip, *by itself*, did not create a reasonable inference that the informant had access to reliable information. *See Gates*, 462 U.S. at 227, 103 S.Ct. at 2326. Under the totality-of-the-circumstances test, however, our inquiry does not stop there.

■ Even if an anonymous tip, on its face, does not provide enough detailed information to establish that the informant had access to reliable information, independent police corroboration of some of those details

which *were* provided in the tip nevertheless may support a finding of probable cause.[13] *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329–30 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' "); *Leftwich*, 869 P.2d at 1267–68; *Turcotte–Schaeffer*, 843 P.2d at 661; *People v. Diaz*, 793 P.2d 1181, 1183 (Colo. 1990). Thus, the question before us is whether the information revealed by the informant, when combined with the information gained through Officer Lehmann's independent investigation of that tip, provided the issuing court with a substantial basis to determine that probable cause existed to search Pate's residence. *See Diaz*, 793 P.2d at 1183 ("Corroboration of an anonymous tip with facts learned by an investigating officer is sufficient for 'the practical, common sense judgment called for in making a probable cause determination.' "). We answer that question in the affirmative.

As we noted above, the informant provided a fairly detailed account of a conspiracy to transfer a specified amount of marihuana in order to avoid detection by the police. The informant set forth the mechanics of the transaction as follows: Acosta had been arrested recently on drug charges and feared that the police "were on to him;" Acosta called his girlfriend, Lola Schafer, and asked her to arrange to have thirty-three pounds of marihuana removed from his residence; Schafer then called "Donny" and arranged for Donny to pick up the marihuana from Acosta's residence and transport it to Donny's residence for storage.

11. The trial court recognized this point in its order denying Pate's motion to suppress:

The information given by the caller about the arrest of Acosta, about the nature of narcotics, and about his girlfriend [were] very specifically identified type[s] of information; [they weren't] general types of statements.

12. The People argue that because "Donny's" phone number was unlisted, it should also be considered information that was difficult to obtain and thus more reliable. The problem with this argument is that Officer Lehmann's affidavit did not specify that the number "260–1716" was

unlisted. That fact is therefore irrelevant to our determination of whether probable cause existed to support the search warrant. *Paquin*, 811 P.2d at 398.

13. Other "indicia of reliability" which have been found to support a finding of probable cause include, for example, a statement by the affiant that the informant previously had given reliable information to the police, and the fact that the tip contained a declaration against the informant's penal interest. *See Gates*, 462 U.S. at 227, 103 S.Ct. at 2326; *Leftwich*, 869 P.2d at 1266.

Officer Lehmann corroborated the informant's specific statements about Acosta and his recent arrest on New Mexico warrants for drug offenses. He also checked Acosta's criminal record and discovered that Acosta had been arrested previously for conspiracy to sell marihuana and that an anonymous Crime Stoppers report indicated that he regularly sold marihuana. Officer Lehmann then called the El Paso Criminal Justice Center and confirmed that Acosta was incarcerated at that facility. Officer Lehmann also called the phone number given by the informant and determined that a Mrs. Pate lived at that residence, 2853 Buttermilk Circle. After checking the utilities listing for 2853 Buttermilk Circle, Officer Lehmann learned that a "Donald H. Pate" lived at that residence. Finally, Officer Lehmann checked the criminal history for "Donald H. Pate" and found a traffic record but no criminal arrests.

Although it may have been possible for Officer Lehmann to corroborate even more of the information provided by the informant, we disagree with Pate that additional police investigation of the tip was required in order to support the issuance of a search warrant for 2853 Buttermilk Circle.[14] Pate claims, for example, that prior to seeking a search warrant, the police should have made some effort "to track activities at Acosta's residence or to inquire among the neighbors about unusual activity." Based on the information in the affidavit, however, it was reasonable for the police and the issuing judge to assume that surveillance of Acosta's residence would have been futile because of the strong likelihood that the contraband already would have been removed from Acosta's residence.[15] As the informant indicated, the reason Acosta arranged for the marihuana to be taken to Donny's house was that Acosta recently had been arrested and feared that the

police "were on to him" and would search his residence.

Pate next claims the police also should have verified that Acosta did in fact have a girlfriend named Lola Schafer and that Schafer actually was speaking with Pate during the conversation in question. Although we agree that independent corroboration of the relationship between Acosta and Schafer would have constituted additional evidence of the informant's reliability, it was not a prerequisite to a finding of probable cause. See Gates, 462 U.S. at 246, 103 S.Ct. at 2336. Because several other facts provided by the informant, some of which could not have been easily obtained, were proven to be accurate, the issuing judge reasonably could have inferred from the information included in the affidavit that the informant's allegations of criminal activity were reliable. Abeyta, 795 P.2d at 1327 ("[B]ecause an informant is shown to be right about some things, [s]he is more probably right about other facts [s]he has alleged, including the claim that the object of the tip is engaged in criminal activity."). Furthermore, any attempt by Officer Lehmann to verify the alleged conversation between Schafer and "Donny" almost certainly would have alerted the suspects that the police were investigating their activities. We disagree with Pate's suggestion that the police were required, as a prerequisite to a finding of probable cause, to jeopardize their entire investigation in order to verify a particular factual detail provided by an informant. Such a rule would be unreasonable and would give the police a strong incentive to resort to warrantless searches. See id. at 1327–28.

Pate's final claim is that anonymous informants are "inherently unreliable" and that, in cases involving anonymous tips, this court should require the police to do "extensive" corroboration before probable cause will be

14. This case is thus distinguishable in an important respect from Leftwich. Here, there is no doubt that the information reported to Officer Lehmann established a "nexus between the alleged illegal activity and [the defendant's] home." Leftwich, 869 P.2d at 1268. The informant's statement that the marihuana would be stored in "Donny's" residence, combined with the fact that "Donny's" phone number was traced by Officer Lehmann to Pate's residence, adequately connects the marihuana and the location ultimately searched.

15. It is equally reasonable to assume that surveillance of Pate's residence would have added little to the probable cause calculus in light of the allegation by the informant that Pate was merely storing the marihuana and not selling or otherwise distributing it.

found. As the Supreme Court noted in *Gates,* however, anonymous tips, "particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.'" 462 U.S. at 237–38, 103 S.Ct. at 2332. Therefore, "[w]hile a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen tips is not." *Id.* at 235, 103 S.Ct. at 2330–31. In this case, we have considered the tip on its face and in light of the independent police corroboration described in the affidavit. We agree with the trial court that, under the totality of the circumstances, a substantial basis exists to support the issuing judge's determination that probable cause existed to search Pate's residence. *See Abeyta,* 795 P.2d at 1327–28 (doubts must be resolved in favor of magistrates' determinations of probable cause). Accordingly, we affirm the trial court's judgment of conviction against Pate.

### III

■ We will now address the People's argument that the trial court erred in finding that section 42–2–123.6 violates Article III of the Colorado Constitution. The People claim that the trial court's ruling was premised on a misunderstanding of the separation-of-powers doctrine. We agree.

■ Article III of the Colorado Constitution provides:

> The powers of the government of this state are divided into three distinct departments—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

In construing Article III, we have held that the separation-of-powers doctrine "imposes on the judiciary both a proscription against interfering with the executive or legislative branches, and a duty to perform its constitutional and statutory obligations with complete independence." *People v. Zapotocky,* 869 P.2d 1234, 1244 (Colo.1994); *Pena v. District Court,* 681 P.2d 953, 956 (Colo.1984). The mere fact of cooperation between two branches of government, however, does not establish a separation-of-powers violation. *Smith v. Miller,* 153 Colo. 35, 40–41, 384 P.2d 738, 741 (1963) (noting that "the three departments of government are coordinate and shall co-operate with and complement" each other); *see also Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977) (rejecting argument that U.S. Constitution contemplates a "complete division of authority between the three branches").

■ The question before us in this case is thus whether section 42–2–123.6's requirement that the trial court forward a defendant's driver's license to the Department of Revenue amounts to an unconstitutional interference with the executive branch's statutory duty to enforce the laws governing the revocation of drivers' licenses.[16] Because statutes are presumed constitutional, Pate has the burden of proving beyond a reasonable doubt his claim of unconstitutionality. *People v. Zinn,* 843 P.2d 1351, 1353 (Colo. 1993); *Bloomer v. Boulder County Bd. of Comm'rs,* 799 P.2d 942, 947 (Colo.1990).

Section 42–2–123.6 provides in pertinent part as follows:

> Immediately upon a plea of guilty or nolo contendere or a verdict of guilty by the court or a jury, to an offense for which revocation of a license or permit is mandatory pursuant to section 42–2–122(1)(*l*), the court shall require the offender to immediately surrender his driver's ... license or instruction permit to the court. The court shall forward to the [Department of Revenue] a notice of plea or verdict ..., together with the offender's li-

---

**16.** The trial court based its finding of a violation of separation of powers on the fact that, in its view, section 42–2–123.6 transformed the court into a "bailee" acting for the sole benefit of the executive branch. It apparently concluded that the act of forwarding a driver's license to the Department of Revenue for revocation purposes did not constitute the type of interbranch "cooperation" permissible under Article III.

cense or permit, not later than ten days after the surrender of the license or permit. § 42–2–123.6, 17 C.R.S. (1993). Section 42–2–122(1)(*l*) requires the Department of Revenue to revoke the license of a driver upon receiving notice that the driver has "[b]een convicted of any felony offense provided for in [sections 18–18–404 to –406, 8B C.R.S. (1993 Supp.)]." Sections 18–18–404 to –406 define the offenses of unlawful use, sale and possession of controlled substances.

The Department of Revenue is assigned by statute the duty to enforce the provisions in section 42–2–122 governing the revocation of drivers' licenses. However, the General Assembly expressly reserved to the judiciary the specific task of seizing and forwarding to the Department of Revenue the drivers' licenses of those defendants convicted of specified drug offenses. § 42–2–123.6. It cannot plausibly be argued that in complying with section 42–2–123.6 a trial court would violate the doctrine of separation of powers.

It is axiomatic that the judiciary has the exclusive power to impose sentences which fall within the limits determined by the General Assembly. *People v. Montgomery*, 669 P.2d 1387, 1390 (Colo.1983); *People v. Schwartz*, 823 P.2d 1386, 1386–87 (Colo.App. 1991). In this case, the General Assembly specifically included the power to seize the driver's license from an offender and to forward it to the Department of Revenue within the range of sanctions available to trial courts when sentencing persons convicted of certain drug offenses. *See Zinn*, 843 P.2d at 1353–55 (describing the license revocation and forwarding provisions as "sanctions designed to prevent criminal conduct and to punish persons who engage in criminal conduct"). Thus, a trial court's decision to seize and forward an offender's license to the Department of Revenue pursuant to sections 42–2–123.6 and 42–2–122(1)(*l*), is clearly encompassed within its sentencing authority.

Furthermore, the fact that a court, in exercising such authority, is "cooperating" with the executive branch in an effort to enforce the license-revocation statute does not mean that the judiciary is thereby "interfering" with those duties statutorily committed to the executive branch. *Smith*, 153 Colo. at 40–41, 384 P.2d at 741. Rather, the license-forwarding requirement in section 42–2–123.6 is precisely the type of practical interbranch cooperation which is implicit in the notion of a government of separate but "coordinate" powers. *See id.* To hold otherwise would severely limit the fundamental purpose underlying Article III, that is, to provide for "the *orderly* distribution of power among the three branches of state government." *Montgomery*, 669 P.2d at 1389 (emphasis added).

Accordingly, we reverse the trial court's ruling that section 42–2–123.6 violates the separation-of-powers doctrine under Article III of the Colorado Constitution and remand the case to that court for further proceedings consistent with this opinion.

Justice LOHR concurs in part and dissents in part.

Justice ERICKSON joins in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

I concur in part III of the majority opinion concerning separation of powers. In part II of that opinion, however, the majority holds that the affidavit offered in support of an application for a warrant to search the residence of the defendant, Donald Hugh Pate, set forth sufficient facts to allow a judge to find probable cause for issuance of the warrant. The majority therefore concludes that the trial court properly denied the defendant's motion to suppress evidence seized at his residence in execution of the warrant. I do not agree that the affidavit was sufficient to support a finding of probable cause, and therefore dissent to part II of the majority opinion.

I.

The affidavit for search warrant, signed on May 11, 1992, was based on a telephone tip from an anonymous caller (the caller), supplemented by police corroboration of some of the information in the tip and by some other facts obtained by police investigation. The caller stated that Michael Acosta had been

arrested the previous week on New Mexico warrants for narcotics violations and that Acosta had a girlfriend named Lola Schafer. The caller then passed along information she had received from her girlfriend, "whose name she would not volunteer,"[1] that Acosta had called Schafer to ask that Schafer arrange to have marijuana removed from his residence "because the Police were onto him." The caller also related information obtained from the caller's unidentified girlfriend that Schafer had used the unidentified girlfriend's telephone, dialed 260–1716, spoke to someone she addressed as Donny, "and made arrangements for Donny to pick up the marijuana from Michael Acosta's residence, and store it at Donny's residence." According to the unidentified girlfriend, the quantity of marijuana discussed in the conversation between Schafer and Donny was thirty-three pounds. The caller stated that she had never met Schafer or Donny and did not know where Donny lived.

The police then corroborated certain of the information. The officer who executed the affidavit called 260–1716 and talked to "a female who identified herself as MRS. PATE, at the address of 2853 Buttermilk Circle." A check of the utilities listing for 2853 Buttermilk Circle produced the names of Donald H. Pate and Anita C. Pate. The affiant officer checked a criminal history on Donald Hugh Pate and found "a traffic record but no criminal arrests." The officer also confirmed that a Michael Acosta had been arrested on May 9, 1992, on New Mexico warrants for possession of marijuana with intent to distribute and that he had been arrested in 1985 in Arizona for conspiracy to sell marijuana and in 1980 for felony larceny and first degree trespass. The officer also confirmed that Acosta was at the El Paso County Criminal Justice Center. The affidavit gave a description of the dwelling at 2853 Buttermilk Circle, stated that it was in Colorado Springs in El Paso County, and requested a search warrant for that dwelling. Based on the officer's affidavit, a judge is-

sued the search warrant that is contested in this proceeding.

## II.

I agree with the majority's summary of the abstract principles of law that apply when making a probable cause determination in cases such as this, where the affidavit in support of the search warrant is based on information provided by an anonymous informant. It is in the application of those principles to the facts of this case that I differ with the majority.

In determining the existence of probable cause, we have abandoned the two-pronged *Aguilar–Spinelli* test[2] in favor of the totality of the circumstances test formulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See People v. Paquin*, 811 P.2d 394, 397–98 (Colo.1991); *People v. Pannebaker*, 714 P.2d 904, 907 (Colo.1986). Nevertheless, "[t]he totality-of-the-circumstances test does not lower the standard for probable cause determinations...." *People v. Leftwich*, 869 P.2d 1260, 1265 (Colo.1994), and the two prongs of *Aguilar–Spinelli*—veracity or reliability, and basis of knowledge—remain highly relevant considerations in assessing the totality of the circumstances. *People v. Turcotte–Schaeffer*, 843 P.2d 658, 661 (Colo.1993); *see People v. Diaz*, 793 P.2d 1181, 1183 (Colo.1990) ("informant's reliability, veracity, and basis of knowledge are still important factors to be considered in determining whether probable cause exists"); *People v. Contreras*, 780 P.2d 552, 556 (Colo. 1989) (basis of knowledge, veracity and reliability are important and are closely related considerations to be taken into account when determining if probable cause exists). Information within the affidavit for search warrant in the present case satisfied neither prong and failed to meet the ultimate test for the existence of probable cause: whether the affidavit supplied the judge with a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See Gates,*

---

1. The quoted material in this statement of facts appears in the affidavit for search warrant.

2. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

462 U.S. at 236, 103 S.Ct. at 2331; *Panne-baker*, 714 P.2d at 907.[3]

Because the person who supplied the information to the police was anonymous and provided the information by telephone, it is impossible in this case to assess the veracity of the informant or the reliability of her information from the telephone tip itself. There is no indication that the informant had ever provided reliable information on past occasions, and her statements included no admission against penal interest. *See Paquin*, 811 P.2d at 394, 398 (emphasizing that the affidavit contained a statement that the confidential informant had purchased narcotics from the defendant and, further, that the informant had previously provided information that resulted in a felony arrest); *Turcotte–Schaeffer*, 843 P.2d at 661 (admissions against penal interest have traditionally been relied upon as a means of showing that information is reliable). The veracity deficiency is compounded because the caller did not purport to have personal knowledge of the facts concerning the call from Michael Acosta to Lola Schafer or from Schafer to "Donny," but said that they were supplied to her by a girlfriend "whose name she would not volunteer." Intrinsically, there is nothing in the informant's call to the police to establish the veracity of the anonymous caller or the reliability of the information that she supplied.

Basis of knowledge was absent as well. The affidavit contains no information on the source of the caller's information that Michael Acosta was arrested on New Mexico warrants for narcotics violations. The entire story concerning a telephone call from Acosta to Schafer and the later call by Schafer to "Donny" asking Donny to pick up marijuana at Acosta's residence and store it at Donny's residence came from the anonymous girlfriend of the anonymous informant.[4] The informant herself did not purport to have personal knowledge that this information was true.

I recognize, of course, that under the totality of the circumstances test, we do not accord independent status to veracity or reliability, and basis of knowledge:

Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Paquin*, 811 P.2d at 397 (quoting *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329–30). In this case, however, there is nothing in the telephone tip itself to demonstrate the veracity of the informant, the reliability of the information, or an adequate basis for the informant's purported knowledge. Therefore, absent some other sufficient indicia of reliability of the telephone tip, probable cause for the search is lacking.

The majority holds that police corroboration of several of the details provided by the informant is enough to compensate for the absence of demonstrated veracity or reliability and basis of knowledge and to satisfy the totality of the circumstances test. Where an informant's allegations are insufficient by themselves to establish probable cause, it may be possible to overcome the deficiency by corroborating the details of the tip through independent police work. *Gates*, 462 U.S. at 241–45, 103 S.Ct. at 2333–36; *Leftwich*, 869 P.2d at 1267–68. These details need not necessarily relate to criminal activity. *Gates*, 462 U.S. at 243–44 n. 13, 103 S.Ct. at 2334–35; *Leftwich*, 869 P.2d at 1268.

The focus of a court in reviewing an affidavit that relies on corroboration of non-criminal activity is the degree of suspicion that attaches to particular types of corroborated non-criminal acts and whether the

---

3. The test is necessarily framed in somewhat general terms for, as the United States Supreme Court observed in *Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329.

4. "[T]he giving of a detailed story by itself does not establish reliability because an informant could simply tell an elaborate lie." *Turcotte–Schaeffer*, 843 P.2d at 662. Some other indicia of reliability are necessary.

informant provides details which are not easily obtained. [*Turcotte–Schaeffer*, 843 at 660–61]. The purpose of the inquiry is to determine if the informer's statements regarding non-incriminatory facts indicate familiarity with the implicated individual or the alleged criminal activity that would allow an inference that the informer's allegations of criminal activity are reliable. *Leftwich*, 869 P.2d at 1268. In this case, the police officer who executed the affidavit for arrest warrant verified only the criminal background and recent arrest of Acosta, and confirmed that a phone number provided by the informant led to a determination that Donald H. Pate lived at the address corresponding with that phone number. This corroboration was not sufficient to indicate that the informant or the anonymous girlfriend who supplied her with information was familiar with the defendant or the alleged criminal conduct so as to allow an inference that the informant's allegations of criminal activity were reliable.

No degree of suspicion concerning the defendant could attach to the facts that were corroborated, nor does knowledge of those corroborated facts suggest a familiarity with the activities of Acosta or the defendant. Certainly, confirmation of a mere phone number cannot be said to suggest that the person who supplied the number was familiar with the activities of the persons to whom the number was listed. No other information confirmed by the officer had any connection with the defendant or his alleged criminal conduct. The allegation that the defendant had a relationship, direct or indirect, to Acosta or his girlfriend was never corroborated. Moreover, the facts that the officer verified, including the facts concerning Acosta's arrest, were not difficult to obtain. "Facts that are easily obtained ... add little to the decision of whether probable cause for a search exists." *Leftwich*, 869 P.2d at 1268.

The instant case is analogous to *People v. Leftwich*, which was decided by this court just a few months ago, in which we held that

an affidavit in support of a warrant to search the defendant's home did not establish probable cause. In that case, an anonymous letter was received by the Boulder Police Department. The letter gave information about a man whom the letter identified as "Jeff" and described as "an active drug dealer." *Leftwich*, 869 P.2d at 1264. It described the man and his car in some detail and informed police that the man collected drugs "at a music store located in Kansas City just North of the intersection of 39th and Main on the East side of the street. The collection times may coincide with the vacation times of the university in Colorado. The drugs are then taken to Boulder for resale." *Id.*

Many of the non-incriminating factual details recited in the letter were independently corroborated by the police. They corroborated the description of the defendant, Jeffrey Leftwich, and the defendant's automobile, including license plate number. They verified that the defendant was a student at the University of Colorado and had traveled in his van to Kansas City during spring break, and they also confirmed the existence of a music store located near 39th and Main in Kansas City—a "[k]nown ... high drug area." *Id.* at 1264 n. 5.

Despite the corroboration, we determined that there was not a substantial basis for concluding that the defendant "was engaged in any illegal activity, let alone that drugs would be found in his house." *Id.* at 1268. Even fewer relevant facts were corroborated in the present case. The majority distinguishes *Leftwich* on the basis that in the present case the information provided by the anonymous informant to the police established a nexus between the alleged illegal activity and the defendant's home, a connection absent in *Leftwich*. Maj. op. at 692 n. 14. This overlooks the essential similarity that in *Leftwich* we also determined on a more detailed factual basis than present here that there was no probable cause to believe that the defendant was engaged in illegal activity.[5]

---

5. It is also instructive to recall the facts of *Illinois v. Gates* in which the United States Supreme Court first enunciated the totality of the circumstances test for probable cause. In brief, the

police in Illinois received information through an anonymous letter advising that a named husband and wife who lived at a particular location in Illinois were selling drugs for a living and de-

Consequently, I would hold that the affidavit, deriving its core of essential information from a story told by an anonymous caller and derived in important part from information provided by the caller's unidentified girlfriend, did not provide the issuing judge .a substantial basis for concluding that there was probable cause to believe that drugs would be found at the defendant's residence. The warrant was therefore invalid, and any evidence obtained pursuant thereto must be suppressed. I recognize the desirability and appropriateness of generally resolving doubts in favor of a magistrate's determinations of probable cause in order to encourage applications for search warrant. *See Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. However, this goal cannot vitiate the standard requiring that a magistrate have a substantial basis for concluding that probable cause exists before issuing a warrant. The majority's holding that the affidavit in this case did provide the issuing judge with a substantial basis for concluding that probable cause existed to search the defendant's residence sets an inappropriately low threshold for probable cause, thereby permitting governmental invasion of a home, an area at the core of Fourth Amendment privacy protections, on a lesser showing than constitutionally required. Therefore, I respectfully dissent to part II of the majority opinion.

Justice ERICKSON joins in this concurrence and dissent.

scribing in some detail their *modus operandi* in obtaining those drugs in Florida and returning them to Illinois. The letter referred to a particular trip planned by the couple to obtain more drugs, including the date the wife would depart for Florida by car and the information that the husband would follow in a few days to return with the car and the drugs while the wife would return by plane. The police through investigation and surveillance verified that the couple traveled to Florida as predicted, one by car and the other by plane, and conducted themselves in the manner described as their *modus operandi* by the anonymous letter writer. On the basis of this information, the police in Illinois obtained a warrant to search ·the automobile upon its return to Illinois and the residence of the couple, and the search was ultimately sustained as constitutional by the United States Supreme Court. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The contrast between the degree of detail in the tip and the extent of corroboration by the police in *Gates* and that existing in the present case makes apparent that the majority is applying the totality of the circumstances doctrine to find probable case based on a much more attenuated showing of reliability than existed in the case that gave the doctrine birth.